# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MASSACHUSETTS

_____
                                      )
**ORLANDO RILEY,**                    )
         **Plaintiff**         )
                                      )
**v.**                                )       **Civil Action No.: 1:15-CV-14137-DJC**
                                      )
**MASSACHUSETTS DEPARTMENT**          )
 **OF STATE POLICE**                )
         **Defendant**         )
_____)

## PLAINTIFF'S REQUEST FOR JURY INSTRUCTIONS

Pursuant to Fed. R. Civ. P. 51(a), the plaintiff hereby requests that this Court instruct the jury on his claims as described herein.

Respectfully submitted,

PLAINTIFF
Orlando Riley

By his attorneys,

/s/ Ellen J. Messing_____
Ellen J. Messing
BBO No. 343960
emessing@mrwemploymentlaw.com
James S. Weliky
BBO No. 631066
jweliky@mrwemploymentlaw.com
Messing, Rudavsky & Weliky, P.C.
50 Congress St., 1000
Boston, MA 02109
(617) 742-0004

Dated: November 9, 2018

1)      **<u>INTRODUCTION</u>**

In this case, the plaintiff, Orlando Riley, makes a claim under a federal civil rights statute that prohibits employers from discriminating against job applicants based on their race or color. Specifically, Officer Riley claims that the defendant, the Massachusetts State Police, denied him admission to its "80th Recruit Training Troop" or "80th RTT" because of his race or color by relying on a biased background investigation conducted by Trooper Robert Lima.  The defendant denies that Officer Riley was discriminated against and asserts that he was not admitted because he was dishonest during the background investigation.

Throughout these instructions, when I refer to "the defendant" or "MSP," I intend you to understand that I am referring to the Massachusetts State Police.

To succeed on his claim, Officer Riley must prove that it is more likely than not that the defendant denied him admission to the 80th RTT because of his race or color.

I will now instruct you more fully on the issues you must address in this case.

<u>See</u> McNamara and Southerland, <u>Federal Employment Jury Instructions</u> (Rev. Dec. 2012), §3:100; <u>Draft proposed Pattern Jury Instructions for Cases of Employment Discrimination (Disparate Treatment) for the District Courts of the U.S. Court of Appeals for the First Circuit</u>, §1.1, at 8 (updated 4/10/12) ("1st Cir. Draft Jury Instructions").

**2)**     <u>**WHAT IS AND IS NOT EVIDENCE**</u>

The evidence in this case consists of the sworn testimony of witnesses, both on direct and cross-examination (and redirect and recross examination), and the exhibits that have been received into evidence.

Certain things are not evidence.

Arguments and statements by lawyers are not evidence. The lawyers are not witnesses. What they say in their opening statements and closing arguments is intended to help you interpret the evidence, but it is not evidence. If the facts as you remember them from the evidence differ from the way the lawyers have stated or will state them (or the way the Court has referenced them), your collective memory of the facts should control.

Questions by lawyers, standing alone, are not evidence. Again, the lawyers are not witnesses. The question and the witness's answer taken together are the evidence.

Objections by lawyers are not evidence. Lawyers have a duty to their clients to object when they believe a question is improper under the rules of evidence. You should not be influenced by any objection or by my ruling on it and you should not speculate or guess about what the answer might have been or what an exhibit might have said.

Anything that I have excluded from evidence or ordered struck from the record and instructed you to disregard is not evidence.

Anything you may have seen or heard when the court was not in session is not evidence.

You are to decide the case solely on the evidence received at trial.

Also, during the course of the trial I may have made comments to the lawyers or spoken to a witness concerning the manner of his or her testifying. Do not assume from anything that I may have said that I have any opinion concerning any of the issues in this case. Except for my

instructions to you on the law, you should disregard anything I may have said during the trial in arriving at your own findings as to the facts.

Serabian v. SAP America, Inc., CA No. 16-cv-10501 (Sept. 27, 2018).

**3)**   <u>**KINDS OF EVIDENCE: DIRECT AND CIRCUMSTANTIAL**</u>

There are two kinds of evidence: direct and circumstantial. Direct evidence is evidence that directly addresses the truth of a fact, such as testimony from an eyewitness that the witness saw something. Direct evidence could be a simple assertion by someone, for example: "it is raining outside." That is a statement of a fact observed. If you thought that person who said that to you was truthful and had a sufficient basis for knowing what the weather was like outside, you could accept the statement as direct evidence that it is raining outside. Alternatively, if you doubted the reliability of the statement, you could reject it.

Circumstantial evidence is indirect evidence, that is, proof of a fact or facts from which you could draw the inference, by reason and common sense, that another fact exists, even though it has not been proved directly. To illustrate an example of circumstantial evidence, let's return to the prior example regarding the weather outside. Suppose that instead of having someone report to you about the weather conditions, someone came in from outside wearing a wet raincoat and shaking water off an umbrella. Without any words being spoken, that is, without any direct statement or assertion being made, an observer might conclude that it was raining outside. The observer would have some direct evidence to consider: the observations of a wet raincoat and a dripping umbrella. Thinking about those pieces of direct evidence might lead the observer to draw a conclusion, or an inference, about an unobserved fact: that it was raining.

You are entitled to consider both kinds of evidence. The law permits you to give equal weight to both or to give greater weight to one or the other. It remains for you to decide how much weight to give to any evidence.

<u>Serabian v. SAP America, Inc.</u>, CA No. 16-cv-10501 (Sept. 27, 2018).

**4)**   **<u>INFERENCES</u>**

Although you may consider only the evidence presented in the case, you are not limited to the plain statements made by witnesses or contained in the documents. In other words, you are not limited solely to what you saw and heard as the witnesses testified.

You are also permitted to draw reasonable inferences from the facts, if you believe those inferences are justified in light of common sense and personal experience. An inference is simply a deduction or conclusion that may be drawn from the facts that have been established.

Any inferences you draw must be reasonable and based on the facts as you find them. Inferences may not be based on speculation or conjecture.

<u>Serabian v. SAP America, Inc.</u>, CA No. 16-cv-10501 (Sept. 27, 2018).

**5)**     <u>**CATEGORIES OF EVIDENCE**</u>

      There are different categories of evidence that you have before you. This evidence includes exhibits and witness testimony.  Let me instruct you about each of these forms of evidence.

<u>Serabian v. SAP America, Inc.</u>, CA No. 16-cv-10501 (Sept. 27, 2018).

**6)**     **<u>EXHIBITS</u>**

First, you have a number of exhibits. You will have the exhibits that have been

introduced in evidence during the course of the trial with you in the jury room. Many of these

exhibits have been shown to you in the course of the presentation of evidence, while others, I

believe, have not. You will have all of the exhibits entered into evidence, both those that have

been discussed and displayed and those that have not. You may consider the exhibits and give

them whatever value or significance in your deliberations as you think is appropriate.

<u>Serabian v. SAP America, Inc.</u>, CA No. 16-cv-10501 (Sept. 27, 2018).

**7)** <u>**CREDIBILITY OF WITNESSES**</u>

In addition to exhibits, you have the testimony of the witnesses.

You do not have to accept the testimony of any witness if you find the witness not credible. You must decide which witnesses to believe and which facts are true. To do this, you must look at all the evidence, drawing upon your common sense and personal experience. You may believe everything a witness says, or only part of it, or none of it. It is entirely up to you.

You may want to take into consideration such factors as the witnesses' conduct and demeanor while testifying; their apparent fairness or any biases they may have displayed; relation to either party; any interests they may have in the outcome of the case; any prejudices they may have shown; their opportunities for seeing and knowing the things about which they have testified; and the reasonableness or unreasonableness of the events that they have described.

The following are the kinds of questions you may want to consider in evaluating a witness's credibility. Did the person seem honest? Did he or she have some reason not to tell the truth? Did the witness have an interest in the outcome of the case? Did he or she gain any personal advantage by testifying in this case? Did the witness seem to have a good memory? Did the witness's testimony differ from his or her earlier testimony or from the testimony of other witnesses? Was the witness's testimony different on cross and direct examination? What was the witness's manner while testifying? These are some, but, of course, not all, of the kinds of things that will help you decide how much weight to give to what each witness said.

The mere number of witnesses or exhibits or the length of the testimony has no bearing on what weight you give to evidence or on whether you find that the burden of proof has been met. Weight does not mean the amount of the evidence. Weight means your judgment about the credibility and importance of the evidence.

<u>Serabian v. SAP America, Inc.</u>, CA No. 16-cv-10501 (Sept. 27, 2018).

**8)**   **PRIOR INCONSISTENT STATEMENTS**

The testimony of a witness may be discredited or impeached by showing that he or she previously made statements that are inconsistent with his or her present testimony. If a witness is shown to have given inconsistent statements concerning any material matter, you have a right to distrust that witness's testimony in other respects. You may reject all of the testimony of that witness or give it such credibility as you may think it deserves.

Sometimes, of course, people make innocent mistakes, particularly as to unimportant details; not every contradiction or inconsistency is necessarily important. Again, you alone are the judges of the witnesses' credibility.

Some prior inconsistent statements may be used for purposes other than impeachment. If you find that a witness has made inconsistent statements under oath on an earlier occasion, such as in a deposition, you may consider that earlier statement for its truth or falsity, the same as any testimony at the trial.

Serabian v. SAP America, Inc., CA No. 16-cv-10501 (Sept. 27, 2018).

**9)**      **<u>WITNESS BIAS</u>**

        In deciding whether to believe a witness, you should specifically note any evidence of positive or negative feelings that the witness may personally have towards either Officer Riley or the State Police.  Likewise, you should consider evidence of whether a witness has some interest or motive for viewing one side more positively or negatively or for taking the part of one side or the other.  For example, if a witness is employed by one party or the other, that witness may feel obligated to take the part of her or his employer.

        It is your duty to consider whether the witness has permitted any such bias or interest to affect his or her testimony.  In short, if you find that a witness is biased, you should view his or her testimony with caution, weigh it with care, and subject it to close and searching scrutiny.

**First Paragraph:** <u>Culbero v. Lee</u>, 2014 U.S. Dist. LEXIS 176437, at *22-23 (S.D.N.Y. Sep. 30, 2014) (and cases cited) (employer-employee relationship between witness and party may lead to bias). <u>Accord</u>, <u>Charter v. Chleborad</u>, 551 F.2d 246, 248 (8th Cir. 1977), as cited by <u>Conde v. Starlight I</u>, 103 F.3d 210, 214 (1st Cir. 1997).

**Second Paragraph:** <u>See</u> Sand, <u>Modern Federal Jury Instructions</u>, Instruction 76-2 (Pub. 485, Release 72A, April 2018) (hereinafter, "Sand Instructions"), <u>citing</u> <u>Davis v. Alaska</u>, 415 U.S. 308, 316 (1974), and charge of Judge Weinfeld in <u>Powell v. Sealectro</u> (S.D.N.Y 1964).

**10)**     <u>**WITNESS INTEREST IN OUTCOME OF CASE**</u>

In evaluating the credibility of the witnesses, you should take into account any evidence that a witness may benefit in some way from the outcome of the case. Such interest in the outcome creates a motive to testify falsely and may sway a witness to testify in a way that advances her or his own interests. Therefore, if you find that any witness whose testimony you are considering may have an interest in the outcome of this trial, then you should bear that factor in mind when evaluating the credibility of her or his testimony, and accept it with great care.

Keep in mind, though, that it does not automatically follow that testimony given by an interested witness is to be disbelieved.  There are many people who, no matter what their interest in the outcome of the case may be, would not testify falsely.  It is for you to decide, based on your own perceptions and common sense, to what extent, if at all, the witness's interest has affected his or her testimony.

<u>See</u> Sand Instructions, 76-3, <u>citing</u> <u>Davis v. Alaska</u>, 415 U.S. 308, 316 (1974), and charge of Judge Weinfeld in <u>Powell v. Sealectro</u> (S.D.N.Y 1964).

**11)**     <u>**EXPERT WITNESS**</u>

In this case, I have permitted Dr. Wiesen to testify to an opinion on those matters about which he has special knowledge, skill, experience, and training. Such testimony is presented to you on the theory that someone who is experienced and knowledgeable in the field can assist you in understanding the evidence or in reaching an independent decision on the facts.

In weighing Dr. Wiesen's testimony, you may consider his qualifications, opinions, reasons for testifying, as well as all of the other considerations that ordinarily apply when you are deciding whether or not to believe a witness's testimony. You may give the opinion testimony whatever weight, if any, you find it deserves in light of all the evidence in this case. You should not, however, accept opinion testimony merely because I allowed Dr. Wiesen to testify concerning his opinion. Nor should you substitute it for your own reason, judgment, and common sense. The determination of the facts in this case rests solely with you.

<u>See</u> Sand Instructions, 76-9.

**12)**   **<u>NOTE-TAKING/NO TRANSCRIPT</u>**

As I indicated at the beginning of the trial, you were permitted to take notes, but some cautions apply as you begin your deliberations. You should bear in mind that not everything that is written down is necessarily what was said. Thus, when you return to the jury room to discuss the case, do not assume simply because something appears in somebody's notes that it necessarily took place in court. Notes are an aid to recollection, nothing more; the fact that something is written down does not mean that it is necessarily accurate. Your collective memory of the evidence, not any of your notes, control.

As I instructed at the beginning of the case, you will not be given a transcript of the trial. Since you will not have a transcript, you should rely on your collective memory of the evidence.

<u>Serabian v. SAP America, Inc.</u>, CA No. 16-cv-10501 (Sept. 27, 2018).

**13)**     **BURDEN OF PROOF–PREPONDERANCE OF EVIDENCE**

The party with the burden of proof on any given issue must prove every disputed element of his or its claim to you by a preponderance of the evidence.  In this case, Officer Riley has the burden of proving that he was discriminated against because of his race or color.

What does a "preponderance of evidence" mean?  To establish a fact by a preponderance of the evidence means to prove that the fact is more likely true than not true.  A preponderance of the evidence means the greater weight of the evidence.  It refers to the quality and persuasiveness of the evidence, not to the number of witnesses or documents.  In determining whether a claim has been proved by a preponderance of the evidence, you may consider the relevant testimony of all witnesses, regardless of who may have called them, and all the relevant exhibits received in evidence, regardless of who may have produced them.

The party with the burden of proof need prove no more than a preponderance of the evidence.  So long as you find that the scales tip, however slightly, in favor of the party with this burden of proof—that what the party claims is more likely true than not true—then that element will have been proved by a preponderance of the evidence. On the other hand, if you find that the credible evidence on a given issue is evenly divided between the parties—that is equally probable that one side is right as it is that the other side is right—then you must decide that issue against the party having this burden of proof.  That is because the party bearing this burden must prove more than simple equality of evidence—he must prove the element at issue by a preponderance of the evidence.

Some of you may have heard of proof beyond a reasonable doubt, which is the proper standard of proof in a criminal trial.  That requirement does not apply to a civil case such as this

and you should put it out of your mind.


See Sand, Modern Federal Jury Instructions, Instruction 73-2 (Pub. 485, Release 72A, April 2018) (hereinafter, "Sand Instructions"), citing Romano v. U-Haul Int'l, 233 F.3d 655 (1st Cir. 2000).

**14)** **TITLE VII OF THE CIVIL RIGHTS ACT, 42 U.S.C. §2000e-2** *et seq.*

I am now going to instruct you on the law relevant to this case.  Title VII of the Civil Rights Act of 1964 makes it illegal for employers to discriminate against potential employees on account of their race and/or color.

These laws were enacted by Congress to prohibit race discrimination in employment, to assure equality of employment opportunities, and to eliminate those discriminatory practices and devices which have fostered racially stratified job environments to the disadvantage of minority citizens.  Title VII aims to eradicate discrimination throughout the economy and make people whole for injuries suffered from past discrimination.

See Gebser v. Lago Vista Indep. Sch. Dist., 524 U.S. 274 (1998); Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993); Meritor Sav. Bank v. Vinson, 477 U.S. 57, 66-67 (1986); Johnson v. Railway Express Agency, Inc., 421 U.S. 454 (1975); McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).

**15)**   **RACE AND COLOR DISCRIMINATION – CAUSATION**

Officer Riley has the burden of proof on his claim for race and color discrimination. This means that you may find for Officer Riley on his claim of race discrimination if you find by a preponderance of the evidence that MSP denied him admission to the 80th RTT because of his race or color.  It is not necessary for Officer Riley to prove that his race or color were the only reason for MSP's actions.

You may decide that other factors were involved as well in MSP's decision-making process.  In that event, in order for you to find for Officer Riley, you must find that he has proven that, although there were other factors, he would not have been denied employment without the race or color discrimination.

**First Paragraph:** See McNamara and Southerland, Federal Employment Jury Instructions, §3:102; 1st Cir. Draft Jury Instructions, §1.1, at 8 and 11, citing Carey v. Mt. Desert Island Hosp., 156 F.3d 31, 39 (1st Cir. 1998) (Title VII) (instruction "requiring [a verdict for the defendant] if *any* reason other than gender played, however minimal, a part" in the challenged employment decision places too heavy a burden on plaintiff); and Hazen Paper Co. v. Biggins, 507 U.S. 604, 617 (1993) (ADEA) ("Once a 'willful' violation has been shown, the employee need not additionally demonstrate that the employer's conduct was outrageous, or provide direct evidence of the employer's motivation, or prove that age was the *predominant*, rather than a determinative, factor in the employment decision." (emphasis added)).

**Second Paragraph:** See 1st Cir. Draft Jury Instructions, §1.1, at 8 and 11.

**16)**     <u>**CAUSATION – PRETEXT**</u>

In order to succeed on his discrimination claim, Officer Riley must persuade you, by a
preponderance of the evidence, that were it not for race or color discrimination, he would have
been admitted to MSP's 80th Recruit Training Troop. You should consider the believability of
MSP's explanation for his rejection and determine whether it was a cover-up or pretext for
discrimination. "Pretext" means false or, though true, not the real reason for the action taken.

There are various types of evidence that you could use to conclude that MSP's stated
reason for not admitting Officer Riley is in fact a pretext. For example, "when an employer
provides 'different and arguably inconsistent explanations' for rejecting an employee, a … jury
may infer (but need not) that the articulated reasons are pretextual."

You may also consider evidence that MSP's background investigation process was
susceptible to racial bias because it was ad hoc, subjective and lacking in standards.

You may also consider statistical evidence that African American candidates failed the
background investigation stage of the admission process to the 80th RTT at a disproportionately
higher rate than white candidates.

You may also consider evidence that those involved in the decision plaintiff challenges
were untruthful, misstated or distorted facts of importance to that decision.

**First Paragraph:** <u>See</u> 1st Cir. Draft Jury Instructions, §1.1, at 8 and 13, <u>citing</u> <u>DeCaire v.</u>
<u>Mukasey</u>, 530 F.3d 1, 20 (1st Cir. 2008) ("To the extent the district court said it *required*
DeCaire to present evidence beyond disproving the government's arguments as pretext, that was
error." (emphasis in original)).

**Second Paragraph:** <u>Riley v. Mass. Dep't of State Police</u>, 2018 U.S. Dist. LEXIS 87059, at *26
(D. Mass. May 24, 2018), <u>quoting</u> <u>Dominguez-Cruz v. Suttle Caribe, Inc.</u>, 202 F.3d 424, 432 (1st
Cir. 2000).

**Third Paragraph:** <u>Riley v. Mass. Dep't of State Police</u>, 2018 U.S. Dist. LEXIS 87059, at *27
(D. Mass. May 24, 2018), <u>citing</u> <u>Garrett v. Hewlett-Packard Co.</u>, 305 F.3d 1210, 1218 (10th Cir.

2002).

**Fourth Paragraph:** <u>Id.</u>, at 18, <u>citing</u> <u>McMillan v. Mass. Soc. For Prevention of Cruelty to Animals</u>, 140 F.3d 288, 303 (1st Cir. 1998).

**Fifth Paragraph:** <u>See</u> <u>id.</u>, at 19.

**17)**      <u>**CONSIDER TOTALITY OF EVIDENCE TO DETERMINE LIABILITY**</u>

In determining whether Officer Riley has suffered race discrimination, you must look at all of the evidence presented, both direct and circumstantial.  Do not assess the evidence before you in isolation.  From all the evidence you have heard and seen, you must form your own judgment about whether it is more likely than not that Officer Riley suffered race or color discrimination.

<u>See</u> Sand Instructions, 73-2, 78-3; <u>Faragher v. City of Boca Raton</u>, 524 U.S. 775, 787 (1998); <u>Harris v. Forklift Sys., Inc.</u>, 510 U.S. 17, 22-23 (1993).

**18)**     <u>**EMPLOYER LIABILITY**</u>

If you find that MSP Trooper Lima was acting within the scope of his employment in

conducting and reporting on his background investigation of Officer Riley, you must find that

MSP is responsible for his actions.

<u>See</u> <u>Howard v. Univ. of S. Miss.</u>, 1980 U.S. Dist. LEXIS 17102, at *1-3, *17-18 (S.D. Miss. Apr. 17, 1980) (where employer's screener discriminatorily discouraged plaintiff applicant, employer liable; relief denied on unrelated grounds); <u>McGarry v. Bd. of County Commrs.</u>, 175 F.3d 1193, 1199-1200 (10th Cir. 1999) (conclusions in report by employee, who investigated plaintiff's non-hire, constitute evidence within scope of employee-investigator's agency; considered against employer); <u>Williams v. Nashville Network</u>, 132 F.3d 1123, 1126, 1131-33 (6th Cir. 1997) (employer liable under Title VII for judgment as a matter of law where non-supervisory staffer screened out applicant). <u>See generally</u> Restatement (Third) of Agency, §7.07 (<u>respondeat superior</u> liability of principal for acts of its agent acting within the scope of his agency); 42 U.S.C. § 2000e(b) (term "employer" in Title VII includes agent); <u>Indest v. Freeman Decorating</u>, 164 F.3d 258, 262 (5th Cir. 1999) (Title VII incorporated "agent" into "employer" definition in Title VII in order to incorporate <u>respondeat superior</u> liability, citing cases from two federal circuits); <u>Jimenez v. Dyncorp. Intl., LLC</u>, 635 F. Supp. 2d 592, 601-02 (W.D. Tex. 2009) (applying agency principles to determine employer liability under Title VII).

19) **DAMAGES**

The law recognizes that victims of discrimination suffer damages.  This means that if you find that MSP discriminated against Officer Riley, then you must award him such sum as you find by the preponderance of the evidence will fairly and justly compensate him for any damages you find he sustained as a direct result of MSP's decision to fail to hire him.

The purpose of an award of such damages is to make Officer Riley whole for all the losses that he has suffered because of the defendant's unlawful discrimination.  The object is to try to restore the person to the position he would have been in had the wrong not occurred.  Damages are to be awarded to the plaintiff as a fair and reasonable compensation for the legal wrong done to him by the defendant.  Officer Riley bears the burden of proof on damages.

The fact that I instruct you on damages does not represent any view by me that you should or should not find MSP liable.  I am giving you these instructions for your guidance so that you will have guidance should you decide that Officer Riley is entitled to recovery.

If you find that MSP unlawfully discriminated against Officer Riley, then you may award damages in the following three areas:

1. Back pay;[*]

2. Front pay;* and

3. Emotional distress.

I will explain each to you.

---

[*] Plaintiff has moved in his Motion in Limine to Exclude After-Acquired Evidence of Alleged Misconduct (Doc. 195), in the alternative, that if this Court determines that defendant's proposed after-acquired evidence is deemed admissible, then it should be considered only by the Court in the exercise of the Court's equitable power to award back and front pay.  It should not be presented to the jury because it is highly prejudicial, and would have no probative value if the Court decides back and front pay.  Should this Court agree, then the portion of this instruction referencing back and front pay, and the following proposed jury instructions regarding back pay (instruction 19), front pay (instruction 20) and after-acquired evidence (instruction 21) need not be given, since this Court will determine those categories of damages.  However, should this Court rule otherwise, then plaintiff requests that the entirety of this and proposed jury instructions 19, 20 and 21 be read to the jury as well.

See 42 U.S.C. §§ 1981a, 2000e-5; Serabian v. SAP America, Inc., CA No. 16-cv-10501 (Jury Instructions Sept. 27, 2018), at 23; 1st Cir. Draft Jury Instructions, §9.1, at 53; Sand Instructions, 77-1, 88-70.

**20)**    **BACK PAY**

       If you find that MSP discriminated against Officer Riley, Officer Riley is entitled to recover back pay.  The measure of the back pay is determined by what Officer Riley would have earned but for the violation—here, the failure to admit him to the 80th RTT.  To calculate back pay, you must look to the evidence introduced concerning what Officer Riley would have earned or other monies and value of benefits he would have received had he been hired by the State Police.

       To determine the amount of back pay, you must make several calculations:

1. First, determine the amount of income Officer Riley would have earned between 2011 and today had he been admitted to the 80th Recruit Training Troop.

2. Then, determine the value of the employee benefits Officer Riley would have had if he had been admitted in 2011.

3. Then, subtract the amount Officer Riley actually earned, and the value of the employee benefits he received in the job in which he worked, between 2011 and today.

See McNamara and Southerland, Federal Employment Jury Instructions, §1:1270.

**21)** **FRONT PAY**

If you find that MSP discriminated against Officer Riley, you may award Officer Riley any future pay and benefits that you are reasonably certain he would have earned while he was employed by the MSP from the date of trial for as long into the future as you think reasonable.

If you decide that Plaintiff is entitled to front pay, you should make reasonable estimates based on the evidence concerning the amount of future pay and benefits that Officer Riley would have received between now and the date in the future you think is reasonable, less the value of compensation that you project he will earn from other employment over the same time period.

If you award damages to plaintiff for losses he will suffer in the future, keep in mind that plaintiff cannot be awarded damages that overcompensate the losses that he suffered because of MSP's conduct. To avoid overpaying plaintiff, you must consider that the amount of money you give plaintiff today for future losses can be put in the bank, where it can earn interest. So, in making an award for future damages, you must determine the amount of money that, if invested today at a reasonable rate of interest, would in the future provide Plaintiff with the amount of money that you calculated he will lose in the future as a result of SAP' s conduct. You should, however, not consider any interest on damages in calculating any damages others than in calculating any future pay award as I have just explained.

Serabian v. SAP America, Inc., CA No. 16-cv-10501 (Jury Instructions Sept. 27, 2018), at 25-26.

**22)**   **AFTER-ACQUIRED EVIDENCE**

MSP contends that Officer Riley intentionally failed to disclose in his application to the 80th Recruit Training Troop that he was the subject of a 2006 citizen complaint against him and another New Bedford officer, that if he had been employed at the time that MSP discovered this, it would have terminated him, and therefore that the MSP should not have to pay any back pay damages after that date.

MSP has the burden of proof on this defense.  MSP must prove, by a preponderance of the evidence, that in the absence of bias it would have found that Officer Riley intentionally withheld information about the 2006 citizen complaint. Second, MSP must prove that, in the absence of bias and under its actual employment practices at the time of discovery, it would have terminated Officer Riley because of this non-disclosure.

If you find that MSP has proved both elements by a preponderance of the evidence, you should limit any award of back pay to the period between the date Officer Riley was denied admission and the date you find that MSP would have terminated Officer Riley as a result of discovering the 2006 citizen complaint.

See 1st Cir. Draft Jury Instructions, §9.1, at 54, 57; McKennon v. Nashville Banner Publ. Co., 513 U.S. 352, 361-62 (1995); O'Neill v. Runyon, 898 F. Supp. 777, 781 (D. Colo. 1995). See also Miranda v. Deloitte LLP, 962 F. Supp. 2d 379, 386-87 (D.P.R. 2013)(when evaluating question of after-acquired evidence, courts must look to employer's actual employment practices and not just the standards outlined in its personnel manuals); Palmquist v. Shinseki, 729 F. Supp. 2d 425, 429 (D. Me. 2010)(for employer to obtain benefit of after-acquired evidence doctrine, employer must establish "not only that it could have fired an employee for the later-discovered misconduct, but that it would in fact have done so"), quoting O'Day v. McDonnell Douglas Helicopter Co., 79 F.3d 756, 759 (9th Cir. 1996).

**23)**     <u>**EMOTIONAL DISTRESS AND SUFFERING**</u>

In addition to calculating any lost wages, you must determine what other loss, if any, Officer Riley has suffered or will suffer in the future caused by any race or color discrimination that you find MSP has committed under the instructions I have given you.  We call these compensatory damages.  You may award compensatory damages for emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, loss of reputation, humiliation, and other noneconomic losses if you determine that Officer Riley has proven by a preponderance of the evidence that he has experienced any of these consequences as a result of race or color discrimination by defendant  No evidence of the monetary value of intangible things like emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life and other noneconomic losses is available, and there is no standard I can give you for fixing any compensation to be awarded for these injuries.  Even though it is obviously difficult to establish a standard of measurement for these damages, that difficulty is not grounds for denying a recovery on this element of damages.  You must, therefore, make the best and most reasonable estimate you can, not from a personal point of view, but from a fair and impartial point of view, of the amount of emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, loss of reputation, humiliation, and other noneconomic losses you find that Officer Riley has undergone and can probably be expected to suffer in the future as a result of MSP's conduct.  And you must place a money value on this, attempting to come to a conclusion that will be fair and just to both of the parties.  This will be difficult for you to measure in terms of dollars and cents, but there is no other rule I can give you for assessing this element of damages.

<u>See</u> 1st Cir. Draft Jury Instructions, §9.1, at 53.

**24)**     **PREJUDGMENT INTEREST**

If you find that MSP discriminated against Officer Riley and that Officer Riley is entitled

to damages, you may award him prejudgment interest on his back pay and emotional distress

awards.  Prejudgment interest is calculated from the date Officer Riley was notified that he was

not being hired until the date that I enter my final judgment after your verdict in this case.

Prejudgment interest should be awarded in an amount that you determine is appropriate to make

Officer Riley whole and to compensate him for the time between when he was injured and the

day of your verdict.  It is entirely up to you to determine the appropriate rate and amount of any

prejudgment interest you decide to award.

See 1st Cir. Draft Jury Instructions, §9.1, at 53, 56; Tobin v. Liberty Mut. Ins. Co., 553 F.3d 121,
147-48 (1st Cir. 2009); Conway v. Electro Switch Corp., 825 F.2d 593, 602 (1st Cir. 1987).

**25)**   **<u>SPECIAL VERDICT FORM</u>**

I have prepared a special verdict form for you to use in recording your decision.  The special verdict form is made up of questions concerning the important issues in this case.  You must answer these questions with either a "yes" or "no."  Your answers must reflect your conscientious judgment.  You should answer every question unless the verdict form indicates otherwise.

<u>See</u> Sand Instructions, 78-9.

## <u>CERTIFICATE OF SERVICE</u>

       I, James S. Weliky, hereby certify that this document, filed through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants, on November 9, 2018.

                     /s/ James S. Weliky_____
                     James S. Weliky, Esq.

Dated: November 9, 2018