**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| ORLANDO RILEY<br><br>Plaintiff,<br><br>v.<br><br>MASSACHUSETTS STATE POLICE<br><br>Defendant. | C.A. 1:15-cv-14137-DJC |

**DEFENDANT'S MOTION FOR JUDGMENT AS A MATTER OF LAW**

Pursuant to Rule 50(a) of the Federal Rules of Civil Procedure, Defendant Massachusetts State Police ("MSP") hereby respectfully moves, at the close of Plaintiff Orlando Riley's evidence, for judgment as a matter of law. As explained in more detail below, no reasonable jury would have a legally sufficient evidentiary basis to find for Riley on his claim of race discrimination.

**ARGUMENT**

Pursuant to Federal Rule of Procedure 50(a), once a party has been fully heard on an issue during trial, if the Court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue, the Court can resolve the issue and grant a motion for judgment as a matter of law against the party. *See* Fed. R. Civ. P. 50(a). When a defendant moves for judgment, the Court must take the evidence "in the light most favorable to the plaintiff, including drawing all inferences in plaintiff's favor." *Philip v. Cronin*, 537 F.3d 26, 33 (1st Cir. 2008). However, as with opposition to a motion for summary judgment, the plaintiff opposing a Rule 50(a) motion must provide "more than a scintilla of evidence and may not rely

on conjecture or speculation." *DiMercurio, Inc. v. St. Paul Mercury Ins. Co.*, 169 F.3d 43, 53 (1st Cir. 1999).

## I. RILEY HAS NOT ESTABLISHED A PRIMA FACIE CASE BECAUSE HE WAS NOT SIMILARLY SITUATED TO ANY HIRED CANDIDATE

In a failure-to-hire case such as this, Riley's prima facie case requires him to show: "(1) he is a member of a protected class; (2) he was qualified for the position to which he applied; (3) he applied to that position and was not hired; and (4) the position to which he applied was filled by a person possessing similar or inferior qualifications." *Cruz v. Mattis*, 861 F.3d 22, 25 (1st Cir. 2017). Here, Riley cannot establish either the second or fourth element of his prima facie case. The evidence does not show Riley was qualified for the position to which he applied because, among other reasons now in the record, he was untruthful on his application materials to MSP and did not have the requisite attention to detail necessary for advancement to the MSP academy. Moreover, because Riley cannot show that MSP hired another similarly situated candidate for the 80th RTT from outside his protected class, his claim must also fail. *See Cruz,* 861 F.3d at 25; *Goncalves v. Plymouth Cty. Sheriff's Dep't*, 659 F.3d 101, 106 (1st Cir. 2011) (fourth element requires plaintiff to "point[] to . . . evidence establishing that []he was similarly situated to the hired candidates"); *Martinez-Burgos v. Guayama Corp.*, 656 F.3d 7, 12 (1st Cir. 2011) (similar). Specifically, Riley cannot show that MSP hired any similar individual subject to comparable concerns (or, indeed, any concerns at all) regarding their truthfulness.

It is Riley's burden to demonstrate that he was passed over in favor of a "similarly situated" candidate. *See Texas Dep't of Cmty. Affairs v. Burdine,* 450 U.S. 248, 258 (1981). To meet that burden, Riley must point to someone hired who had "roughly equivalent qualifications" and who was similar to Riley in all "material respects." *Goncalves*, 659 F.3d at 106 (1st Cir. 2011) (internal citations omitted). In other words, "apples should be compared to

apples." *Id.* (quoting *Dartmouth Review v. Dartmouth Coll.*, 889 F.2d 13, 19 (1st Cir. 1989)). "The test is whether a prudent person, looking objectively at the incidents, would think them roughly equivalent and the protagonists similarly situated." *Dartmouth Coll.*, 889 F.2d at 19.

The evidence produced to date at trial[1] shows that Riley failed his background investigation because MSP determined that he made knowingly untruthful statements. Trooper Robert Lima and Major Kevin Butler both testified to such, and there has been no testimony showing that MSP did not actually believe that Riley had been untruthful.[2] Pursuant to MSP's list of automatic disqualifiers, if a candidate knowingly misrepresents or falsifies information submitted on any document filed in conjunction with the hiring process for the State Police or makes false statements to the background investigator, he is automatically disqualified from eligibility for entrance to the State Police academy.

MSP determined that Riley was untruthful based on a variety of factors. First, he did not disclose that he had been a subject of the New Bedford Police Department's ("NBPD") internal investigation into the escape of prisoner John Soares. It is undisputed that Riley knew of the investigation and had appeared for an interview prior to submitting his original application. It is undisputed that Riley found out he was a subject of the Soares investigation at the latest on May 24, 2011 (MSP contends it was much earlier), more than three months before his interview with Trooper Lima. It is undisputed that despite having multiple communications with Trooper Lima prior to the interview and updating other information on his original application, Riley never

---

1 Trial transcripts are not available at this time. References to trial evidence in this Motion are based on counsel's notes and recollections.

2 Dr. Joel Wiesen's expert testimony does not prove otherwise. First, MSP continues to argue that Wiesen's testimony should have been stricken for the reasons delineated in MSP's Motion to Strike (Dkt. Nos. 123-124) and MSP's Motion *in Limine* to Exclude the Testimony of Joel P. Wiesen. Dkt. No. 192. Second, Wiesen's testimony does not undercut the testimony of multiple MSP witnesses that they genuinely believed Riley was untruthful during the application process.

sought to correct the false statement on his application that he had never been the subject of an internal investigation. It is also undisputed that Riley filled out his Questionnaire after knowing he was the subject of the Soares investigation, yet incorrectly answered at least two questions on that Questionnaire, including denying that his name was in any NBPD case report and stating that everything on his Application remained true and accurate. Second, Riley did not disclose that he had applied to the Providence Police Department on his Application. Moreover, Trooper Lima testified that he asked Riley during his interview if Riley had applied to any other police departments and Riley again failed to disclose Providence. There is no testimony to the contrary in the record. Third, Riley omitted three of his four high schools on his original application and failed to disclose that he attended Dartmouth high school even when pressed on this issue during his interview. Additionally, Riley's stated reason for leaving Bishop Stang (a residency requirement) was also incorrect.

Given this testimony, Riley must show that there is at least one similarly situated hired candidate for whom MSP overlooked comparable suggestions or concerns of untruthfulness. The universe of potential comparators are the four other candidates that Lima conducted background investigations for in the 80th RTT. Three of the candidates self-identified as white (A.G., A.P. and J.W.); all three were disqualified for failing their background investigations. The fourth candidate self-identified as Asian/Pacific Islander (J.H.) and passed his background investigation.

There is no evidence in the record that MSP had any concerns with J.H.'s truthfulness. Indeed, Lima praised J.H. for his honesty in acknowledging prior experimentation with marijuana. Any mistakes J.H. made on his application (i.e. not listing his high school) were promptly fixed at the interview (in contrast to Riley) and did not suggest a concealment of bad

facts. In contrast, the evidence has shown that MSP did have truthfulness concerns regarding candidates A.G. and A.P. (both white). Both of these candidates were rejected, just like Mr. Riley. As a result, Riley cannot demonstrate that MSP hired any similarly situated candidate whose investigation raised comparable (or even any) red flags of potential untruthfulness. As such, judgment as a matter of law should enter in favor of MSP.

## II. MSP'S REASONS FOR DISQUALIFYING RILEY WERE LEGITIMATE

To the extent that Riley has established a prima facie case, MSP has met its burden of articulating legitimate, non-discriminatory reasons for Riley's disqualification. Multiple MSP witnesses testified that truthfulness is one of the most important qualities they are looking for during the application process. For the 80th RTT, untruthfulness constituted grounds for automatic disqualification under the guidelines and the Review Board disqualified multiple candidates due, in whole or part, to untruthfulness. Both the Application and Questionnaire expressly informed candidates—and required candidates to certify their understanding—that the provision of false or misleading information could result in their disqualification. Therefore, MSP meets its burden at the second stage.

## III. RILEY CANNOT ESTABLISH PRETEXT OR THAT THE TRUE REASON FOR MSP'S ACTION WAS DISCRIMINATION

Once MSP has articulated a legitimate, non-discriminatory reason for Riley's disqualification, Riley "must introduce sufficient evidence to support two findings: (1) that [the] articulated reason. . . is a pretext, and (2) that the true reason is discriminatory." *Espinal v. Nat'l Grid NE Holdings 2, LLC*, 693 F.3d 31, 35 (1st Cir. 2012) (internal citations and quotation marks omitted).

In analyzing a claim of "pretext," the Court does not "sit as a super-personnel department that reexamines an entity's business decisions." *Id.* (internal citations and quotation marks

omitted). Instead, the Court's task is to determine "whether the employer believed in the accuracy of the reason given for the adverse employment action." *Id.* (internal citations and quotation marks omitted). *See Kouvchinov v. Parametric Tech. Corp.*, 537 F.3d 62, 70 (1st Cir. 2008) (defendant's "reasonable belief . . . guides the inquiry" and where the plaintiff "has failed to make out a genuine issue as to the reasonableness of [the defendant's belief] . . . the charge of pretext fails"); *Shorette v. Rite Aid of Me., Inc.*, 155 F.3d 8, 15 (1st Cir. 1998) (similar). Where an employer relied on more than one justification for its action, the plaintiff may defeat summary judgment only by showing that each of the justifications was a pretext for discrimination. *See Dennis v. Osram Sylvania, Inc.*, 549 F.3d 851, 859 (1st Cir. 2008); *Curley v. City of N. Las Vegas*, 772 F.3d 629, 633 (9th Cir. 2014); *Jaramillo v. Colorado Jud. Dep't*, 427 F.3d 1303, 1309-10 (10th Cir. 2005).

Riley can avoid motion for judgment as a matter of law only by advancing competent evidence that: (a) Lima and MSP's expressed belief that Riley was untruthful was not genuine; and (b) racial animus was the real reason for their conclusions. *See Espinal*, 693 F.3d at 35; *Dukanci v. Ann Inc. Retail*, 117 F. Supp. 3d 115, 123 (D. Mass. 2015). Riley has not done so.

The extensive reasons that MSP believed Riley to be untruthful are detailed above. Riley provided a series of excuses at trial, but none of them matter given the focus on *MSP*'s perception. *See, e.g.*, *Kouvchinov*, 537 F.3d at 67; *Mesnick v. Gen. Elec. Co.*, 950 F.2d 816, 824 (1st Cir. 1991) ("[A] court's focus must be on the perception of the decisionmaker."); *Sweatt*, 796 F.3d at 710 (even if the plaintiff had a "misunderstanding" with his background investigator, that would "not change the fact that [he] was not forthcoming"; "[F]or a position where honesty and integrity are paramount . . . lack of candor understandably served as the death knell for his candidacy"); *Gaston*, 2008 WL 540853, at *15 (plaintiff's "litany of weak explanations for his apparent misstatements" during background investigation were irrelevant to pretext inquiry); *Lopez v. Cont'l Ins. Corp.*,

1997 WL 148032, at *4 (N.D. Tex. Mar. 25, 1997) (plaintiff failed background investigation and argued that he made no "actual, knowing misrepresentations"; "the truth . . . is irrelevant to whether the information provided a legitimate, nondiscriminatory basis for refusing to hire [the plaintiff]"; what matters is whether the investigator believed "in good faith believed that [the plaintiff] had committed . . . fraud").

For example, Riley claims that he did not learn he was a subject of the Soares investigation until May 24, 2011. Even if this is true, it does not matter. Lima and MSP were entitled to conclude that Riley was untruthful, particularly given his other selective and self-serving corrections to the Application, his false answers on the Questionnaire, and his defensiveness and lack of forthrightness at the interview itself.

Riley also claims that he did not understand the meaning of certain questions on the Application and the Questionnaire. Again, even if this is true, it does not matter. For the same reasons detailed above, and given the plain language of the questions themselves, Lima and MSP were entitled to conclude that Riley was untruthful.

The fact that Lima originally believed Riley actually received a written reprimand in the Soares investigation (rather than having the recommendation for a written reprimand sustained but not acted on) is similarly irrelevant. It is undisputed that Liam corrected this fact with the Review Board prior to the Review Board's decision to disqualify Riley on September 26, 2011. Riley still failed to disclose that he was a subject of the internal investigation and MSP resultingly found him untruthful.

The testimony of Dr. Wiesen also does not demonstrate pretext. As noted above, MSP continues to argue that Wiesen's testimony should have been stricken for the reasons outlined in MSP's Motion to Strike (Dkt. Nos. 123-124) and MSP's Motion *in Limine* to Exclude the

Testimony of Joel P. Wiesen. Dkt. No. 192. Moreover, Dr. Wiesen's statistical evidence concerning state police background investigations is not sufficiently specific to this case to demonstrate pretext. As this Court has noted, statistical evidence "cannot be untethered to the actual allegations in this case." Dkt. No. 112. Statistical evidence in a disparate treatment case "rarely suffices to rebut an employer's legitimate, nondiscriminatory rationale for its decision to dismiss an individual employee." *LeBlanc v. Great American Ins. Co*., 6 F.3d 836, 848 (1st Cir. 1993). In a disparate treatment case, "the issue is less whether a pattern of discrimination existed and more how a particular individual was treated, and why." *Cumpiano v. Banco Santander P.R.*, 902 F.2d 148, 156 (1st Cir. 1990). "A statistic is only helpful if it tends to prove the discriminatory intent of the decision makers involved, which often will be difficult." *Ray v. Ropes & Gray LLP*, 799 F.3d 99, 116 (1st Cir. 2015) (internal citations and quotation marks omitted).

The statistics that matter with respect to this case are that 4 out of 5 (80%) of Trooper Lima's candidates failed their background investigations, including 3 out of 3 (100%) of his self-identified white candidates. Given that Lima himself conducted only 5 out of the 363 (1.4%) of the 80th RTT investigations that made it to the point of a final background investigation determination, Dr. Wiesen's generalized statistics cannot overcome those specific to Lima and Riley.

Similarly, Dr. Wiesen's claim that the MSP background investigation system is "subjective" does not demonstrate pretext in this specific case. Dr. Wiesen himself admits subjectivity is part of any selection process, and, in any event, Riley was eliminated because he was found to be untruthful. There is no subjectiveness to how the State Police deal with untruthful candidates; the Application, Questionnaire, and Automatic Disqualifiers all make it clear that

untruthful candidates are disqualified from advancing to the Academy. That is what happened to Riley and the two white candidates who were found to be untruthful.

## IV. RILEY HAS NOT ESTABLISHED THAT THE REVIEW BOARD WAS NEGLIGENT IN RELYING ON LIMA

Riley has also failed to provide sufficient evidence that the Review Board was tainted by Lima's alleged animus. While MSP contends that Riley has not shown any racial animus on the part of Lima, even if he had, he would still have to demonstrate that the Review Board was negligent in missing the signs of such animus. As the evidence has shown, Lima was neither a supervisor nor a decision-maker. Under Title VII, an employer may be responsible for a non-supervisor's discriminatory animus only if the decision-makers were negligent—that is, if they "know[] (or reasonably should know) of the [subordinate's] discriminatory motivation." *Velazquez-Perez v. Developers Diversified Realty Corp*., 753 F.3d 265, 273-74 (1st Cir. 2014).

There has been no evidence presented to date at trial that any member of the review board knew or reasonably should have known of Lima's alleged discriminatory motivation. There is no evidence that Lima had ever been the subject of a complaint of racial bias or discrimination. His background investigations resulted in three out of three (100%) self-identified white candidates being disqualified. Even Plaintiff's September 22, 2011 letter to the review board does not contend that Lima acted with racial bias. As such, there has been no evidence presented that the Review Board reasonably should have known that Lima acted with bias.

## V. RILEY HAS FAILED TO PROVE DAMAGES BY A PREPONDERANCE OF THE EVIDENCE

Riley bears the burden of proof on damages. Although uncertainty in the amount of damages does not bar recovery and mathematical precision is not required, a jury must not speculate, conjecture, or guess in awarding damages. *See U.S. for Use of John D. Ahern Co. Inc.*

*v. J.F. White Contracting Co.*, 649 F. 2d 29, 32 (1st Cir. 1981). Here, Riley has set forth insufficient evidence to allow the jury to reasonably award damages for front pay or for emotional distress.[3] There is no evidence in the record of the case (or even the discovery record of the case) concerning the difference between the money Riley will receive at NBPD going forward versus the amount of money he would receive at MSP going forward. Without at least that information, a jury could not reasonably award front pay without relying primarily on guesswork, conjecture, or speculation. Similarly, without expert medical testimony, any causal link made by the jury between Riley's claimed emotional distress and the actions of MSP would be a result of speculation, and not a sufficient basis to support a jury verdict. Riley's own witnesses have testified to multiple other factors affecting Riley's mental health (including the condition of his brother and Riley's treatment by a NBPD sergeant) and at least some of these factors occurred in the time period between when Riley was rejected from MSP (September 2011) and the time he started counseling (November 2013). As a result, the alleged causal connection between Riley's rejection from MSP and his stated emotional distress is to attenuated to support an award of damages.

## CONCLUSION

For the foregoing reasons, MSP moves for a directed verdict in its favor on Riley's Amended Complaint in its entirety. To the extent that motion is denied, MSP moves for a directed verdict in its favor on Riley's claim for front pay and emotional distress damages.

[3] The parties have stipulated to the amount of back pay that Riley would receive should he prevail on liability.

Respectfully submitted,

MASSACHUSETTS STATE POLICE

By its attorney,

MAURA HEALEY
ATTORNEY GENERAL,

/s/ Nicholas W. Rose
Dennis N. D'Angelo, BBO No. 666864
Nicholas W. Rose, BBO NO. 670421
Assistant Attorneys General
Government Bureau/Trial Division
One Ashburton Place, Room 1813
Boston, MA 02108
(617) 727-2200
dennis.dangelo@state.ma.us
nicholas.rose@state.ma.us

Date: December 11, 2018

**CERTIFICATE OF SERVICE**

I, Nicholas W. Rose, Assistant Attorney General, hereby certify that I have this day, December 12, 2018, served the foregoing upon the attorneys of record for all parties by filing it through the ECF system.

/s/ Nicholas W. Rose________________________
Nicholas W. Rose