**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| ORLANDO RILEY<br><br>                    Plaintiff,<br><br>          v.<br><br>MASSACHUSETTS STATE POLICE<br><br>                    Defendant. | C.A. 1:15-cv-14137-DJC |

**DEFENDANT'S MEMORANDUM OF LAW**
**IN SUPPORT OF ITS RENEWED MOTION FOR JUDGMENT**
**AS A MATTER OF LAW OR, IN THE ALTERNATIVE, FOR A NEW TRIAL**

Pursuant to Rule 50(b) of the Federal Rules of Civil Procedure, Defendant Massachusetts State Police ("MSP") respectfully submits this memorandum of law in support of its renewed motion for judgment as a matter of law.  MSP contends that there was no legally sufficient evidentiary basis for a jury to find for Plaintiff Orlando Riley ("Riley") on his claim of race discrimination and thus MSP is entitled to judgment as a matter of law.  In the alternative, MSP respectfully requests that it be granted a new trial pursuant to Rule 59 of the Federal Rules of Civil Procedure because the jury's verdict was against the clear weight of the evidence.

**BACKGROUND[1]**

Riley was an applicant to the 80th Recruit Training Troop ("RTT") of the MSP Academy. After Trooper Robert Lima conducted a background investigation of Riley, MSP's Review Board disqualified Riley from consideration for being untruthful.  At Riley's request, the Review Board reconsidered its decision and again decided that Riley should be disqualified.

---

[1] Given the Court's familiarity with this case, MSP includes only a brief summary of the pertinent background facts.

Riley brought a claim for disparate treatment in violation of Title VII and alleged that he "was excluded based on a profoundly biased interview and background investigation by a single state trooper." Am. Compl. ¶ 1. Riley's Amended Complaint did not challenge any of MSP's hiring policies or practices or allege any claim of disparate impact. Nor did Riley allege that any MSP employee other than Lima acted with discriminatory animus.

Riley's claim was tried before a jury from December 3 to December 11, 2018. The jury returned a verdict in Riley's favor, awarding him $79,000 in back pay, $0 in front pay, and $51,000 in emotional distress.

## ARGUMENT

### I.  MSP IS ENTITLED TO JUDGMENT AS A MATTER OF LAW

When a defendant moves for judgment as a matter of law pursuant to Federal Rule of Civil Procedure 50(b), the Court must "examine the evidence and all fair inferences in the light most favorable to the plaintiff and may not consider the credibility of witnesses, resolve conflicts in testimony, or evaluate the weight of the evidence." *Invest Almaz v. Temple-Inland Forest Products Corp.*, 243 F. 3d 57, 76 (1st Cir. 2001) (internal citations omitted). This does not mean, however, that the Court should ignore uncontradicted evidence offered by the defendant. *Santiago-Negron v. Castro-Davila*, 865 F. 2d 431, 445 (1st Cir. 1989). A plaintiff opposing a Rule 50(b) motion must provide "more than a mere scintilla of evidence in its favor" and must do more than "rely on conjecture or speculation." *Invest Almaz*, 243 F. 3d at 76 (internal citations omitted).

### A.  RILEY DID NOT ESTABLISH A PRIMA FACIE CASE BECAUSE HE WAS NOT SIMILARLY SITUATED TO ANY HIRED CANDIDATE

In a failure-to-hire case such as this, Riley's prima facie case requires him to show: "(1) he is a member of a protected class; (2) he was qualified for the position to which he applied; (3)

he applied to that position and was not hired; and (4) the position to which he applied was filled by a person possessing similar or inferior qualifications." *Cruz v. Mattis*, 861 F.3d 22, 25 (1st Cir. 2017).  Here, Riley did not establish either the second or fourth element of his prima facie case at trial.  The evidence presented did not show that Riley was qualified for the position to which he applied because, among other reasons, he was untruthful on his application materials and during his interview and did not have the requisite attention to detail necessary for advancement to the MSP academy.  Moreover, Riley did not present evidence showing that MSP hired another similarly situated candidate for the 80th RTT from outside his protected class; as such, his claim must also fail.  *See Cruz*, 861 F.3d at 25; *Goncalves v. Plymouth Cty. Sheriff's Dep't*, 659 F.3d 101, 106 (1st Cir. 2011) (fourth element requires plaintiff to "point[] to . . . evidence establishing that []he was similarly situated to the hired candidates"); *Martinez-Burgos v. Guayama Corp.*, 656 F.3d 7, 12 (1st Cir. 2011) (similar).  Specifically, Riley did not demonstrate that MSP hired any similar individual subject to comparable concerns (or, indeed, any concerns at all) regarding their truthfulness.

It was Riley's burden at trial to demonstrate that he was passed over in favor of a "similarly situated" candidate.  *See Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 258 (1981).  To meet that burden, Riley had to point to someone hired who had "roughly equivalent qualifications" and who was similar to Riley in all "material respects."  *Goncalves*, 659 F.3d at 106 (1st Cir. 2011) (internal citations omitted).  In other words, "apples should be compared to apples."  *Id.* (quoting *Dartmouth Review v. Dartmouth Coll.*, 889 F.2d 13, 19 (1st Cir. 1989)).  "The test is whether a prudent person, looking objectively at the incidents, would think them roughly equivalent and the protagonists similarly situated."  *Dartmouth Coll.*, 889 F.2d at 19.

The evidence produced at trial[2] showed that Riley failed his background investigation because MSP believed he made knowingly untruthful statements. *See, e.g.*, Tr. Ex. 43 (Riley failed his background investigation for being untruthful on his application and to his background investigator). Trooper Lima and Kevin Butler both testified under oath that they believed Riley had been untruthful on his application materials and during his interview. *See also* Tr. Ex. 38 at 12 (Lima's background investigation found Riley to be untruthful). There was no testimony from any witness at trial suggesting that MSP did not actually believe that Riley had been untruthful during the application process. Riley testified as to why *he* believed he had been truthful throughout, but offered no evidence concerning the beliefs of Lima or the Review Board. *See Mesnick v. Gen. Elec. Co.*, 950 F.2d 816, 824 (1st Cir. 1991) ("[A] court's focus must be on the perception of the decisionmaker").[3] Pursuant to MSP's list of automatic disqualifiers, if a candidate knowingly misrepresents or falsifies information submitted on any document filed in conjunction with the hiring process for the State Police or makes false statements to the background investigator, he is automatically disqualified from eligibility for entrance to the State Police academy. *See* Tr. Ex. 52 at 2-3 (MSP's list of automatic and discretionary disqualifiers).[4]

MSP determined that Riley was untruthful based on a variety of factors. First, Riley did not disclose that he had been a subject of the New Bedford Police Department's ("NBPD")

---

[2] MSP does not have trial transcripts at this time. References to trial evidence in this Motion are based on counsel's notes and recollections.

[3] Nor did Dr. Wiesen. MSP continues to believe that Wiesen's testimony should have been stricken for the reasons delineated in its Motion to Strike (Dkt. Nos. 123-124) and its Motion *in Limine* to Exclude the Testimony of Joel P. Wiesen. Dkt. No. 192. However, even if allowed to stand, Dr. Wiesen's trial testimony provided no evidence that MSP did not genuinely believe Riley was untruthful during the application process.

[4] As Riley himself testified at trial, even if he passed the background investigation and entered the State Police Academy, he would still have had to successfully complete the Academy before becoming a Trooper and individuals who enter the Academy often do not complete it.

internal investigation into the escape of prisoner John Soares on his written application to MSP. *See* Tr. Ex. 16 at 12.  It is undisputed that Riley knew of the investigation and had appeared for an interview prior to submitting this application.  Even resolving all inferences in Riley's favor, it is undisputed that he knew he was a subject of the Soares investigation as of May 24, 2011, more than three months before his interview with Trooper Lima.  It is undisputed that despite having multiple communications with Trooper Lima prior to the interview and updating other information on his original application (*see, e.g.* Tr. Ex. 26), Riley never sought to correct the false statement on his application that he had not been the subject of an internal investigation.  It is also undisputed that Riley filled out his Questionnaire (Tr. Ex. 30) after knowing he was the subject of the Soares investigation, yet incorrectly answered at least two questions on that Questionnaire, denying that his name was in any NBPD case report and stating that everything on his Application remained true and accurate.  *Id*. at 5.  It is also undisputed that Riley did not immediately correct his application during his interview with Trooper Lima.  Both Lima and Butler testified that Riley's actions during the application process concerning the Soares investigation caused them to believe he had been untruthful.

Second, Riley did not disclose that he had applied to the Providence Police Department on either his original or corrected MSP Applications.  *See* Tr. Ex. 16 at 11, Tr. Ex. 31 at 11.  Nor did he correct this inaccuracy when given the opportunity.  Trooper Lima testified that he specifically asked Riley during their interview if Riley had applied to any other police departments and Riley said no.  There is no testimony to the contrary from Riley (or any other witness) in the trial record.

Third, Riley omitted three out of his four high schools on his original application (Tr. Ex. 16 at 3, 20) and still omitted Dartmouth High School from his corrected application.  Tr. Ex. 31 at 3, 20.

Given this undisputed evidence, Riley had to produce evidence at trial showing that there was at least one similarly situated hired candidate for whom MSP overlooked comparable suggestions or concerns of untruthfulness in order to make his prima facie case.  The universe of potential comparators was the four other candidates that Lima conducted background investigations for in the 80th RTT.  *See, e.g.*, Tr. Ex. 1.  Three of the candidates self-identified as white (A.G., A.P. and J.W.) (*see* Tr. Ex. 14 at 25, Tr. Ex. 17 at 25, Tr. Ex. 19 at 25); all three were disqualified for failing their background investigations.  *See* Tr. Exs. 1, 37, 41, 45.  The fourth candidate self-identified as Asian/Pacific Islander (J.H.) (*see* Tr. Ex. 9 at 25) and passed his background investigation.

Riley produced no such evidence.  There was no suggestion at trial that any of the four candidates failed to disclose that they were the subject of an internal investigation.  Moreover, those candidates who arguably had comparable concerns regarding their truthfulness to Riley were also rejected.  Candidate A.P. lied on his application concerning his reason for leaving a prior job and failed to disclose that he had previously applied to the Massachusetts Department of Correction.  *See* Tr. Ex. 19 at 4, 11.  Trooper Lima's background investigation report called A.P. "untruthful" and he was disqualified.  *See* Tr. Ex. 44 at 11, Tr. Ex. 45.  Similarly, candidate A.G. failed to disclose his prior drug use on his application.  *See* Tr. Ex. 14 at 10.  He was rejected for being "untruthful on his application regarding drug use."  Tr. Ex. 37.  In contrast, candidate J.H. (the one candidate who was accepted) disclosed his prior drug use on his original

application.  *See* Tr. Ex. 9 at 10; *see also* Tr. Ex. 32 at 10 (Lima's background investigation report of J.H. noted his honesty in disclosing his prior marijuana use).

Nor was there any evidence produced at trial that MSP had any concerns with J.H.'s truthfulness.  Any mistakes J.H. made on his application (i.e. not listing his high school) were promptly fixed at the interview and did not suggest a concealment of bad facts.  *See* Tr. Ex. 9 at 3.  Riley, in contrast, did not fix either his omission of his Providence application or his attending Dartmouth high school at his interview.  *See* Tr. Ex. 31 at 11, 3, 20.

In short, Riley did not produce evidence at trial showing that MSP hired any similarly situated candidate whose investigation raised comparable (or even any) red flags of potential untruthfulness.  As such, judgment as a matter of law should enter in favor of MSP.

## B.  MSP'S REASONS FOR DISQUALIFYING RILEY WERE LEGITIMATE

Even if Riley established his prima facie case at trial, MSP met its burden of articulating a legitimate, non-discriminatory reason for Riley's disqualification.  As shown above, both the contemporaneous documents and the testimony of Lima and Butler demonstrate that MSP's stated reason for disqualifying Riley was his untruthfulness.  *See* Tr. Ex. 38 at 12, Tr. Ex. 43. Multiple MSP witnesses testified that truthfulness is one of the most important qualities they are looking for during the application process.  For the 80th RTT, untruthfulness constituted grounds for automatic disqualification under the guidelines and the Review Board disqualified multiple candidates due, in whole or part, to untruthfulness.  *See* Tr. Ex. 52 at 2-3, Tr. Ex. 37, Tr. Ex. 45. Both the Application and Questionnaire expressly informed candidates—and required candidates to certify their understanding—that the provision of false or misleading information could result in their disqualification.  *See* Tr. Ex. 30 at 1, Tr. Ex. 31 at 21.  Indeed, even Plaintiff's expert Dr.

Wiesen agreed that truthfulness was a key quality for a police officer.  Therefore, MSP met its burden at trial by articulating a legitimate, non-discriminatory reason for Riley's disqualification.

## C.  RILEY CANNOT ESTABLISH PRETEXT OR THAT THE TRUE REASON FOR MSP'S ACTION WAS DISCRIMINATION

Once MSP articulated a legitimate, non-discriminatory reason for Riley's disqualification, Riley had to "introduce sufficient evidence to support two findings: (1) that [the] articulated reason. . . is a pretext, and (2) that the true reason is discriminatory." *Espinal v. Nat'l Grid NE Holdings 2, LLC*, 693 F.3d 31, 35 (1st Cir. 2012) (internal citations and quotation marks omitted).

In analyzing a claim of "pretext," the jury is not supposed to "sit as a super-personnel department that reexamines an entity's business decisions." *Id.* (internal citations and quotation marks omitted).   Instead, the jury's task is to determine "whether the employer believed in the accuracy of the reason given for the adverse employment action." *Id.* (internal citations and quotation marks omitted). *See Kouvchinov v. Parametric Tech. Corp*., 537 F.3d 62, 70 (1st Cir. 2008) (defendant's "reasonable belief . . . guides the inquiry" and where the plaintiff "has failed to make out a genuine issue as to the reasonableness of [the defendant's belief] . . . the charge of pretext fails"); *Shorette v. Rite Aid of Me., Inc.*, 155 F.3d 8, 15 (1st Cir. 1998) (similar).   Where an employer relied on more than one justification for its action, the plaintiff must show that each of the justifications was a pretext for discrimination. *See Dennis v. Osram Sylvania, Inc*., 549 F.3d 851, 859 (1st Cir. 2008); *Curley v. City of N. Las Vegas*, 772 F.3d 629, 633 (9th Cir. 2014); *Jaramillo v. Colorado Jud. Dep't*, 427 F.3d 1303, 1309-10 (10th Cir. 2005).

To avoid judgment as a matter of law on his claim, Riley needed to advance competent evidence at trial that: (a) Lima and MSP's expressed belief that Riley was untruthful was not

genuine; and (b) racial animus was the real reason for their conclusions.  *See Espinal*, 693 F.3d at 35; *Dukanci v. Ann Inc. Retail*, 117 F. Supp. 3d 115, 123 (D. Mass. 2015).  Riley did not do so.

The extensive reasons that MSP believed Riley to be untruthful are detailed above.  Riley provided a series of excuses at trial, but none of them matter given the focus on *MSP*'s perception.  *See, e.g.*, *Kouvchinov*, 537 F.3d at 67; *Mesnick*, 950 F.2d at 824 ("[A] court's focus must be on the perception of the decisionmaker."); *Sweatt v. Union Pacific R. Co.*, 796 F.3d 701, 710 (7th Cir. 2015) (even if the plaintiff had a "misunderstanding" with his background investigator, that would "not change the fact that [he] was not forthcoming"; "[F]or a position where honesty and integrity are paramount . . . lack of candor understandably served as the death knell for his candidacy"); *Gaston*, 2008 WL 540853, at *15 (plaintiff's "litany of weak explanations for his apparent misstatements" during background investigation were irrelevant to pretext inquiry); *Lopez v. Cont'l Ins. Corp*., 1997 WL 148032, at *4 (N.D. Tex. Mar. 25, 1997) (plaintiff failed background investigation and argued that he made no "actual, knowing misrepresentations"; "the truth . . . is irrelevant to whether the information provided a legitimate, nondiscriminatory basis for refusing to hire [the plaintiff]"; what matters is whether the investigator believed "in good faith believed that [the plaintiff] had committed . . . fraud").

For example, Riley testified that he did not learn he was a subject of the Soares investigation until May 24, 2011.  Even assuming that to be true, however, Lima and MSP were entitled to (and did) conclude that Riley was still untruthful about the Soares investigation given his selective and self-serving corrections to his Application prior to the interview (*see, e.g.*, Tr. Ex. 26), his false answers on the Questionnaire (Tr. Ex. 30 at 5) and the undisputed fact that upon being shown a copy of a recommendation for a written reprimand (Tr. Ex. 12) at his interview, Riley's initial response was "That's not supposed to be in my file."

Riley also testified at trial that he did not understand the meaning of certain questions on the Application and the Questionnaire.  Again, even assuming this to be true, this does not demonstrate pretext.  There was no testimony at trial that Riley told Lima or anyone at MSP that he did not understand any of the crucial questions on the Application or the Questionnaire.  In fact, the opposite is true – Riley admitted that he did not ask for clarification.  Given Riley's silence and given the plain language of the questions themselves, Lima and MSP were entitled to conclude that Riley was untruthful.

The fact that Lima originally believed Riley actually received a written reprimand in the Soares investigation (rather than having the recommendation for a written reprimand sustained but not acted on) is similarly irrelevant.  Both Lima and Butler testified that the Review Board knew the written reprimand had not actually been issued prior to the Review Board's decision to disqualify Riley on September 26, 2011 and there was no evidence at trial to the contrary.  As both Lima and Butler testified, MSP still believed that Riley had been untruthful about his role in the Soares investigation and he was thus disqualified.  Again, there was no evidence presented at trial suggesting that this belief was not genuine.

Finally, the testimony of Dr. Wiesen did not demonstrate pretext.[5]  Dr. Wiesen's statistical evidence concerning MSP's background investigations in general was not sufficiently specific to this case to demonstrate pretext.  As this Court has noted, statistical evidence "cannot be untethered to the actual allegations in this case."  Dkt. No. 112.  Statistical evidence in a disparate treatment case "rarely suffices to rebut an employer's legitimate, nondiscriminatory rationale for its decision to dismiss an individual employee." *LeBlanc v. Great American Ins. Co.*, 6 F.3d 836, 848 (1st Cir. 1993). In a disparate treatment case, "the issue is less whether a

---

[5] As noted above, MSP believes Dr. Wiesen's testimony should have been stricken in its entirety.

pattern of discrimination existed and more how a particular individual was treated, and why." *Cumpiano v. Banco Santander P.R.*, 902 F.2d 148, 156 (1st Cir. 1990). "A statistic is only helpful if it tends to prove the discriminatory intent of the decision makers involved, which often will be difficult." *Ray v. Ropes & Gray LLP*, 799 F.3d 99, 116 (1st Cir. 2015) (internal citations and quotation marks omitted).

For example, Dr. Wiesen's testimony regarding the background investigation pass-rates for African-American candidates versus white candidates is not sufficiently tethered to the allegations in this case to demonstrate pretext. Trooper Lima conducted only 5 out of the 363 investigations (1.4%) that made it to the point of a final background investigation determination for the 80th RTT. Generalized statistics concerning those 363 background investigations simply are not specific enough to demonstrate pretext by Trooper Lima. Dr. Wiesen did not review the applications of any candidates other than those who were examined by Trooper Lima, and he had no knowledge as to why any other candidate was disqualified from advancing to the academy. Dr. Wiesen also testified that he did not examine any application information for any other MSP candidate class other than for the 80th RTT. The relevant statistics with respect to Riley's claim are that 4 out of 5 (80%) of Trooper Lima's candidates failed their background investigations, including 3 out of 3 (100%) of his self-identified white candidates.

Similarly, Dr. Wiesen's testimony that the MSP background investigation system is "subjective" does not demonstrate pretext in this specific case. Dr. Wiesen himself admitted that subjectivity is part of any selection process. Moreover, Riley was eliminated because he was found to be untruthful. There is no subjectiveness to how the State Police deal with untruthful candidates; the Application, Questionnaire, and Automatic Disqualifiers all make it clear that untruthful candidates are disqualified from advancing to the Academy. *See* Tr. Ex. 31 at 21, Tr.

Ex. 30 at 1, Tr. Ex. 52 at 2-3.   That is what happened to Riley and the two white candidates

(A.G. and A.P.) who were found to be untruthful.  *See* Tr. Exs. 43, 37, 45.

### D.  RILEY DID NOT ESTABLISH THAT THE REVIEW BOARD WAS NEGLIGENT IN RELYING ON LIMA

Riley also failed to provide evidence at trial that the Review Board was tainted by Lima's

alleged animus.  While MSP contends that Riley did not demonstrate any racial animus on the

part of Lima, even if he had, he would still have to show that the Review Board was negligent in

missing the signs of such animus.  Lima was neither a supervisor nor a decision-maker.  Under

Title VII, an employer may be responsible for a non-supervisor's discriminatory animus only if

the decision-makers were negligent—that is, if they "know[] (or reasonably should know) of the

[subordinate's] discriminatory motivation." *Velazquez-Perez v. Developers Diversified Realty

Corp.*, 753 F.3d 265, 273-74 (1st Cir. 2014).

There was no evidence presented at trial that any member of the review board knew or

reasonably should have known of Lima's alleged discriminatory motivation.  There was no

evidence that Lima had ever been the subject of a complaint of racial bias or discrimination.  His

background investigations resulted in three out of three (100%) self-identified white candidates

being disqualified.  Even Plaintiff's September 22, 2011 letter to the review board did not

contend that Lima acted with racial bias.  *See* Tr. Ex. 62.  As such, there was no evidence at trial

showing that the Review Board reasonably should have known that Lima acted with bias.

### E.  RILEY FAILED TO PROVE EMOTIONAL DISTRESS DAMAGES BY A PREPONDERANCE OF THE EVIDENCE

Riley bore the burden of proof on damages at trial.  Although uncertainty in the amount

of damages does not bar recovery and mathematical precision is not required, a jury must not

speculate, conjecture, or guess in awarding damages.  *See U.S. for Use of John D. Ahern Co. Inc.*

*v. J.F. White Contracting Co.*, 649 F. 2d 29, 32 (1st Cir. 1981).  Riley did not set forth sufficient

evidence at trial to allow the jury to reasonably award damages for emotional distress.  The only

evidence presented at trial on these damages came from Riley and his friends and family; there

was no corroborating medical testimony or documentation.  While such expert testimony is not

an absolute requirement for recovering emotional distress damages, the lack of such testimony

given the facts in this case means that any causal link made by the jury between Riley's claimed

emotional distress and the actions of MSP would be a result of speculation, and not a sufficient

basis to support a verdict.  Riley's own witnesses testified to multiple other factors affecting his

mental health (including that his brother was suffering from PTSD and that Riley was being

mistreated by a NBPD sergeant) and that at least some of these factors occurred in the time

period between when Riley was rejected from MSP (September 2011) and the time he started

counseling (November 2013).  As a result, the alleged causal connection between Riley's

rejection from MSP and his stated emotional distress is too attenuated to support damages.

## II.      IN THE ALTERNATIVE, MSP IS ENTITLED TO A NEW TRIAL

To the extent the Court is not inclined to grant MSP judgment as a matter of law, MSP

respectfully requests that it be granted a new trial as an alternative.  A new trial pursuant to

Federal Rule of Civil Procedure 59 is warranted if "the verdict is against the weight of the

evidence" or if a new trial "is required in order to prevent injustice."  *Cham v. Station Operators,*

*Inc.*, 685 F. 3d 87, 97 (1st Cir. 2012) (quoting *Jennings v. Jones*, 587 F. 3d 430, 436 (1st Cir.

2009).  The district court may "independently weigh the evidence" and consider the credibility of

witnesses in deciding whether to grant a new trial.  *Id.*; *MacQuarrie v. Howard Johnson Co.*, 877

F. 2d 126, 132 (1st Cir. 1989).

MSP submits that a new trial is warranted for the reasons listed above.  Given that there

was no competent evidence put forward that MSP's concerns about Riley's truthfulness were not

genuine, the jury's verdict finding race discrimination under Title VII was against the weight of the evidence. Moreover, there are also two additional factors that further justify a new trial, either because the verdict is against the weight of the evidence or in order to prevent injustice.

### A. RILEY ALSO FAILED TO DISCLOSE THE STALLINGS INVESTIGATION

In finding for Riley, the jury presumably believed Riley's explanation that he did not realize he was a subject of the Soares investigation until May 24, 2011. Such a holding is against the weight of the evidence given Riley's similar implausible explanation for not disclosing the Stallings investigation.

Shayne Stallings was arrested by the New Bedford Police Department ("NBPD") in 2006 after a house party at 48 Nelson Street in New Bedford. Riley was the officer who cuffed Stallings and brought him out of the house in handcuffs. After Stallings filed a citizen's complaint concerning his arrest, NBPD conducted an internal investigation. Riley was told to appear for an interview regarding an incident at "the area of Nelson and County Streets." Tr. Ex. 4. Riley was interviewed on March 27, 2007. *See* Tr. Ex. 5. At that interview, Riley was told in writing that he could invoke his rights against self-incrimination under the 5th Amendment to the United States Constitution and Article 12 of the Massachusetts Declaration of Rights if he chose. *Id*. He was also told in writing (and testified at trial that he understood) that criminal proceedings could be initiated against him based on evidence obtained from other sources. *Id*.

In May 2010, after the investigation was completed, Plaintiff was notified via email that the "investigation into the complaint *filed against you* in September of 2006" was classified as 'Not Sustained' because there was inadequate evidence to either prove or disprove the complaint. Tr. Ex. 11 (emphasis added). Despite having received this written notification that he was a subject of the Stallings investigation less than a year prior to submitting his MSP Application,

Riley did not disclose the Stallings investigation on his written application or during his interview with Trooper Lima.

Riley testified at trial that he did not disclose the Stallings investigation because he thought he was a witness, not a subject, just like the incorrect assumption he made in the Soares investigation.  Riley states that he thought the May 2010 email (Tr. Ex. 11) was sent to him in error because it was sent three years after the investigation, because there were supposed NBPD email problems at the time, and because the email referenced an incident at "County and Nelson Street" instead of "48 Nelson Street" (the address of the house party).

Riley's purported explanation, however, is belied by the undisputed trial record evidence. The May 2010 email was addressed directly to him and was delivered to him electronically.  *See* Tr. Ex. 11.  Despite being sent in 2010, the email specifically noted the incident had occurred in September 2006, the exact time that Riley had handcuffed Stallings.  *See* Tr. Exs. 11, 4, 5.  The May 2010 email's reference to "County and Nelson Streets" is the same reference that the email telling him to report for an interview made (*see* Tr. Exs. 11, 4) and Riley did not testify that he was confused by the "County and Nelson Streets" reference when reporting for his interview. Moreover, County and Nelson Street is the closest intersection to 48 Nelson Street.  Finally, the May 2010 email specifically told Riley he could contact Lt. Paul Oliveira if he had any questions about its contents; Riley did not do so.  *See* Tr. Ex. 11.

Riley's failure to disclose that he was a subject of the Stallings investigation despite receiving written notification to that effect means the jury's verdict was against the weight of the evidence.  Riley's excuses for not disclosing the Soares and Stallings investigation were identical, namely that he thought he was a witness in both rather than a subject.  That Riley claimed he thought he was just a witness to the Stallings investigation despite getting written

documentation that the claim had been brought "against [him]" directly impacts his claim that his similar omission of the Soares investigation was an honest mistake rather than a deliberate exclusion.  It is also directly probative of his character for truthfulness.  The jury's apparent finding that, despite all this evidence, MSP's conclusion that Riley was untruthful was a pretext for race discrimination is thus against the weight of the evidence and a new trial is appropriate.

### B.  PLAINTIFF'S EXPERT SHOULD NOT HAVE BEEN ALLOWED TO TESTIFY

A new trial is also appropriate because Dr. Wiesen's testimony demonstrates that he should not have been allowed to testify in this disparate treatment case for a variety of reasons.

### 1.  DR. WIESEN WAS NOT QUALIFIED TO BE AN EXPERT ON PUBLIC SAFETY BACKGROUND INVESTIGATIONS

As Dr. Wiesen's trial testimony made clear, he lacks sufficient expertise in the area of public safety background investigations to proffer expert opinions in this case.  Dr. Wiesen testified that he has never conducted a background investigation in any municipal employment context.  Nor has he even observed a background investigation in the law enforcement context. He has never attended the National Background Investigation Bureau Training and he has never drafted any guidelines or interview scripts for background investigations in a law enforcement setting.  He has never been asked by any municipality to consult on their background investigation process, nor has he consulted on any background investigations for initial police hiring.  Even Dr. Wiesen's self-designed test designed for police departments that he sells on his website does not include any instructions to background investigators.  In short, while Dr. Wiesen is a highly educated man, he lacks the specific experience in background investigations to qualify as an expert in this case.  *See, e.g.*, *Levin v. Dalva Brothers, Inc.*, 459 F.3d 68, 78-79

16

(1st Cir. 2006) (affirming trial court's decision to allow expert to testify only on topics for which he demonstrated sufficient expertise)

## 2. DR. WIESEN SHOULD NOT HAVE BEEN ALLOWED TO TESTIFY REGARDING DISPARATE IMPACT TOPICS

Even if Dr. Wiesen were qualified to be an expert on the topic of background investigations, he should not have been allowed to testify regarding the supposed disparate *impact* of MSP's background investigation system.

Throughout the discovery process, this Court repeatedly acknowledged that disparate impact evidence was not relevant to Riley's disparate treatment claim. *See, e.g.*, [Doc. 84] (denying discovery requests seeking evidence that applies to disparate impact claims because Riley did not bring such a claim); [Doc. 54] (denying discovery related to MSP's racial composition and related to other discrimination claims brought against MSP); [Doc. 112] (upholding denial of discovery of evidence unrelated to Lima); *see also Raytheon Co. v. Hernandez*, 540 U.S. 44, 52-54 (2003) (reversing lower court decision that considered discriminatory impact evidence in discriminatory treatment case, noting that "courts must be careful to distinguish between" these two distinct claims).

Despite these rulings, Dr. Wiesen testified at trial regarding the supposed disparate impact of MSP's background investigation system. Dr. Wiesen testified that he was asked to evaluate MSP's background investigation results to determine if there was any indication of an adverse impact on African-Americans. He performed a statistical analysis on all 80th RTT candidates who went through the background investigation system (rather than just those investigated by Trooper Lima) and testified regarding his calculated "adverse impact ratio" based

on these candidates.  Finally, Wiesen concluded for the jury that MSP's background

investigation system had an adverse impact on African-American candidates.[6]

       This disparate impact testimony prejudiced MSP.  Not only was it contrary to this Court's

prior rulings and the discovery conducted in this case, but it likely confused the jury.  Dr.

Wiesen's testimony shifted the focus of whether Riley was individually not hired due to racial

animus to whether African-American candidates in general were disproportionately harmed by

MSP's background investigation system.  Dr. Wiesen's testimony thus should have been

excluded.  *See, e.g.*, *MacPherson v. Univ. of Montevallo*, 922 F. 2d 766, 777 (11th Cir. 1991)

(upholding grant of new trial where district court found that expert's testimony regarding

disparate impact analysis in a disparate treatment case was not relevant and potentially confused

the jury); *Rowe Entertainment Inc. v. William Morris Agency, Inc.*, 2003 WL 22272587, *7

(S.D.N.Y. Oct. 2, 2003) (holding that expert's conclusion that there was industry-wide

discrimination was not relevant to individual plaintiffs' case and would only serve "to interject

substantial unfair prejudice into the case and confuse the jury by directing its attention from the

issues in this case") (internal citations omitted); *see also Cham*, 685 F. 3d at 97 (upholding

determination that exposure to irrelevant evidence had potential to confuse jury and unfairly

prejudice defendant).

    **3.   DR. WIESEN'S TESTIMONY INVADED THE PROVINCE OF THE JURY**

       Dr. Wiesen's testimony was also improper because it contained conclusions that the jury

could have made without expert assistance.  "Expert testimony on a subject that is well within

the bounds of a jury's ordinary experience generally has little probative value."  *United States v.*

---

[6] This focus on disparate impact analysis rather than disparate treatment analysis is consistent with Dr. Wiesen's expert report and prior experience.  The phrase "adverse impact" appears approximately 35 times in Dr. Wiesen's expert report and appendices, and at least six of his prior publications contain "adverse impact" in their titles.

*Montas*, 41 F. 3d 775, 784 (1st Cir. 1994); *see also* Fed R. Evid. 702 (testimony must assist trier of fact); *United States v. Zajanckauskas*, 441 F. 3d 32, 39 (1st Cir. 2006) ("Expert testimony does not assist where the trier of fact has no need for an opinion because it easily can be derived from common sense, common experience, the trier of fact's own perceptions, or simple logic") (internal quotation omitted).

For example, Dr. Wiesen testified on multiple topics regarding the applications and background investigation reports of Riley and the other candidates Trooper Lima investigated. (A.G., A.P., J.H., J.W.).  Wiesen offered no testimony, however, for why his expertise was needed on these topics.  Reviewing case documents (all of which were trial exhibits) and coming to conclusions based on those documents is well within the jury's province and Dr. Wiesen should not have been allowed to testify on these topics.  *See* Fed. R. Civ. P. 702;  *Chin v. Port Authority of New York and New Jersey*, 685 F. 3d 135, 161 (2d Cir. 2012) (upholding exclusion of expert who purported to compare the qualifications of plaintiffs with those of the white officers who were promoted instead; expert analysis was not required to help jury understand such evidence); *Douglas-Smith v. Lamberti*, 2010 WL 11504717, *2 (S.D. Fla. Apr. 5, 2010) (excluding expert testimony and concluding that jury was similarly capable of reviewing the documents the expert did and reaching its own conclusion as to what they mean); *Hiramoto v. Goddard College Corp.*, 184 F. Supp. 3d 84, 97 (D. Vt. 2016) (excluding expert opinion regarding Defendant's employment evaluation process since jury was capable of reaching or rejecting the same opinion without assistance).

## CONCLUSION

For the foregoing reasons, MSP respectfully requests that it be granted judgment as a matter of law on Riley's claim against it. To the extent that motion is denied, MSP requests that

it be granted judgment as a matter of law on Riley's claim for emotional distress damages.  To

the extent that motion is denied, MSP requests that it be granted a new trial.


Respectfully submitted,

MASSACHUSETTS STATE POLICE

By its attorney,

MAURA HEALEY
ATTORNEY GENERAL,

/s/ Nicholas W. Rose
Dennis N. D'Angelo, BBO No. 666864
Nicholas W. Rose, BBO NO. 670421
Assistant Attorneys General
Government Bureau/Trial Division
One Ashburton Place, Room 1813
Boston, MA  02108
(617) 727-2200
dennis.dangelo@state.ma.us
nicholas.rose@state.ma.us


Date:  January 9, 2019


## CERTIFICATE OF SERVICE

I, Nicholas W. Rose, Assistant Attorney General, hereby certify that I have this day, January 9, 2019, served the foregoing upon the attorneys of record for all parties by filing it through the ECF system.


/s/ Nicholas W. Rose_____
Nicholas W. Rose

20