**UNITED STATES DISTRICT COU RT**
**FOR THE DISTRICT OF MASSACHUSETTS**

|  |  |
|---|---|
| ORLANDO RILEY<br><br>              Plaintiff,<br><br>      v.<br><br>MASSACHUSETTS STATE POLICE<br><br>              Defendant. | C.A. 1:15-cv-14137-DJC |

**DEFENDANT'S PARTIAL OPPOSITION TO**
**PLAINTIFF'S MOTION TO ALTER OR AMEND JUDGMENT**

Defendant Massachusetts State Police ("MSP") hereby submits this partial opposition to

Plaintiff's motion to alter or amend the judgment that was entered in this case on December 12,

2018 ("Judgment").  Defendant respectfully contends that instatement of plaintiff to the next

MSP Recruit Training Troop ("RTT") is not appropriate given the jury's verdict and the specific

facts present in this case.  Moreover, while prejudgment interest may be appropriate on

Plaintiff's back pay damages (but not his emotional distress award), such interest should be

calculated using the federal interest rate on a yearly basis.

**I.   INSTATEMENT IS NOT PROPER HERE**

Whether instatement is an appropriate remedy in a Title VII case depends on the facts of

the case.  *Rosario-Torres v. Hernandez-Colon*, 889 F. 2d 314, 321 (1st Cir. 1989) (instatement is

a possible remedy but not a mandatory one; "the hallmark of equity is the ability to assess all

relevant facts and circumstances and tailor appropriate relief on a case by case basis").  Whether

to instate Plaintiff into the next MSP Academy class thus "lies within the discretion of the trial

court."  *Id*. at 321.  MSP respectfully submits that this Court should use its equitable discretion to

deny instatement here because it is inconsistent with the jury's award of zero dollars in front pay,
because the after-acquired evidence concerning the Stallings investigation is a legitimate, non-
discriminatory reason for not instating Plaintiff, and because Plaintiff's attorney waived any right
to instatement in her closing argument.

### A.  Instatement is Inconsistent with the Jury's Verdict

First, instatement is not appropriate here because the jury already found that Plaintiff was
entitled to zero dollars in front pay.  During the charge conference, Plaintiff advocated that the
issue of front pay should go to the jury.  MSP argued that Plaintiff should not be able to base his
decision whether to seek instatement or not on his satisfaction with the amount of front pay
damages the jury awarded.  At the close of the trial, the jury was instructed that the purpose of
awarding damages was to "try to restore the person to the position that he would have been in
had the wrong not occurred" and was specifically instructed on front pay.  Based on the evidence
presented at trial, the jury decided Plaintiff was entitled to zero dollars in front pay and so held.
Not surprisingly, Plaintiff is now moving for instatement as an alternative to front pay.  The
jury's rejection of front pay damages should preclude this.

Other federal courts have denied instatement or reinstatement in comparable cases where
a jury awarded zero damages in front pay.  For example, in *Rzanca v. Kimberly-Clark Corp.*, the
Sixth Circuit denied reinstatement in a case decided under a Michigan civil rights statute
prohibiting discrimination.  1989 WL 142053, *3 (6th Cir. Nov. 27, 1989).  There, like here,
plaintiff argued that because the jury found the defendant unlawfully discriminated against him,
the Court should use its equitable powers to reinstate him.  *Id*.  The Court disagreed, noting that
"normally, an award of front pay obviates reinstatement" and that "the jury specifically found
that [plaintiff] was entitled to no future damages."  *Id*.  The Court further held that its findings on

any equitable claims should be consistent with the jury's verdict and thus denied reinstatement to comport with the jury's front pay award of zero dollars. *Id.* Similarly, in *McIntosh v. Irving Trust Co.*, the Southern District of New York applied the *Rzanca* court's reasoning to a Title VII case. 873 F. Supp. 872, 879-880 (S.D.N.Y. 1995). The court held that the jury's denial of front pay lent "significant support" to the Court's conclusion that reinstatement should not be awarded. *Id.* (holding that back pay award and prejudgment interest on that back pay was sufficient relief to make plaintiff whole) (citing *Rzanca*, 1989 WL 142053 at \*3); *see also Allenson v. Town of Norton Sch. Committee*, 2003 WL 25436636 (Mass. Super. Aug. 30, 2003) (fact that jury did not award front pay counsels against ordering reinstatement in G.L. c. 151B case); *cf. Beilan v. Sun Co., Inc.*, 1990 WL 106581, \*2 (E.D. Pa. July 25, 1990) ("The Court finds that [plaintiff] acquiesced in the submission of the front pay damages issue to the jury and, having done so, he waived any right to later claim he was entitled to reinstatement").

The Court should do the same here. The jury specifically found that the correct amount of front pay damages needed to make Plaintiff whole was zero. Instatement is inconsistent with this verdict. Nor does Plaintiff's brief show otherwise. Plaintiff instead simply restates general Title VII case law regarding reinstatement without considering the jury's front pay verdict. None of the cases Plaintiff cites are cases in which the jury specifically found that no front pay was appropriate. Given the jury's verdict, the Court should deny instatement.

**B. Instatement in Inappropriate Given Plaintiff's Failure to Disclose the Stallings Investigation**

Second, instatement is also inappropriate given Plaintiff's failure to disclose the Stallings investigation.[1] Shayne Stallings was arrested by the New Bedford Police Department ("NBPD")

---

[1] MSP did not know of the Stallings investigation at the time it disqualified Plaintiff and thus the jury did not consider this evidence as proof that Plaintiff was untruthful on his application materials and during his interview with Trooper Lima. However, the Court can consider this

in 2006 after a house party at 48 Nelson Street in New Bedford.  Riley was the officer who

cuffed Stallings and brought him out of the house in handcuffs.  After Stallings filed a citizen's

complaint concerning his arrest, NBPD conducted an internal investigation.  Riley was told to

appear for an interview regarding an incident at "the area of Nelson and County Streets."  Tr. Ex.

4.  Riley was interviewed on March 27, 2007.  *See* Tr. Ex. 5.  At that interview, Riley was told in

writing that he could invoke his rights against self-incrimination under the 5th Amendment to the

United States Constitution and Article 12 of the Massachusetts Declaration of Rights if he chose.

*Id*.  He was also told in writing (and testified at trial that he understood) that criminal

proceedings could be initiated against him based on evidence obtained from other sources.  *Id*.

In May 2010, after the investigation was completed, Plaintiff was notified via email that

the "investigation into the complaint *filed against you* in September of 2006" was classified as

'Not Sustained' because there was inadequate evidence to either prove or disprove the complaint.

Tr. Ex. 11 (emphasis added).  Despite having received this written notification that he was a

subject of the Stallings investigation less than a year prior to submitting his MSP Application, it

is undisputed Riley did not disclose the Stallings investigation on his written application,

questionnaire, or during his interview with Trooper Lima.

Riley testified at trial that he did not disclose the Stallings investigation because he

thought he was a witness and thought the May 2010 email (Tr. Ex. 11) was sent to him in error

because it was sent three years after the investigation, because there were supposed NBPD email

problems at the time, and because the email referenced an incident at "County and Nelson

Street" instead of "48 Nelson Street" (the address of the house party).

---

evidence in deciding whether instatement is appropriate.  *See McKennon v. Nashville Banner Pub. Co.*, 513 U.S. 352, 361-62 (1995) (after-acquired evidence of wrongdoing is relevant to appropriate remedy; court must take into account lawful prerogatives of the employer as well)

Riley's purported explanation, however, is belied by the undisputed trial record evidence. The May 2010 email was addressed directly to him and was delivered to him electronically.  *See* Tr. Ex. 11.  Despite being sent in 2010, the email specifically noted the incident had occurred in September 2006, the exact time that Riley had handcuffed Stallings.  *See* Tr. Exs. 11, 4, 5.  The May 2010 email's reference to "County and Nelson Streets" is the same reference that the email telling him to report for an interview made (*see* Tr. Exs. 11, 4) and Riley never previously claimed to be confused by the "County and Nelson Streets" reference.  Moreover, County and Nelson Street is the closest intersection to 48 Nelson Street, where the party occurred.  Finally, the May 2010 email specifically told Riley he could contact Lt. Paul Oliveira if he had any questions about its contents.  *See* Tr. Ex. 11.   Riley did not do so.

Plaintiff's failure to disclose the Stallings investigation on his application, on his questionnaire, or during his interview is an independent reason to deny instatement now.  *See McKennon*, 513 U.S. at 361-62.  Regardless of how the jury viewed the evidence available to MSP in 2011, as of November 2016 (the date MSP learned of the Stallings investigation), MSP had a new and additional legitimate, non-discriminatory reason to think Plaintiff had been untruthful during the application process.  The undisputed testimony from Jack Flynn, MSP's former Chief Administrative Officer, was that this failure to disclose the Stallings investigation would "rise[] to the level of termination" even if Riley had become a Trooper in 2011.  Trial Trans. Day 7 (attached as Exhibit A) at 14.  This is corroborated by MSP's list of automatic disqualifiers (Tr. Ex. 52 - submitting false information during application process is an automatic disqualifier) and the testimony of multiple witnesses (including Plaintiff's own expert) that trustworthiness is one of the most important characteristics a police officer can have.  *See, e.g.* Exhibit A at 8-9 (Troopers have to be "100 percent honest 100 percent of the time in order to

maintain the credibility that everybody expects of the system"). Given that MSP would have

terminated Plaintiff in 2016 for failing to disclose the Stallings investigation, instatement is not

appropriate. *See, e.g.*, *McKennon*, 513 U.S. at 362 ("It would be both inequitable and pointless

to order the reinstatement of someone the employer would have terminated"), *Kapache v.*

*Holder*, 714 F. Supp. 2d 109, 112-13 (D.D.C. 2010) (denying reinstatement because of after-

acquired evidence of "lack of candor" during application process; Court relied on guidelines

stating that deliberate omissions may be disqualifying and witness testimony that special agents

who make misrepresentations on employment forms are not suitable for employment); *Xu-Shen*

*Zhou v. State Univ. of New York Institute of Technology*, 4 F. Supp. 3d 404, 422 (N.D.N.Y.

2014) (vacated on other grounds) (denying reinstatement in case where several of defendant's

employees testified to their belief that plaintiff had provided fraudulent info during the hiring

process; "to order reinstatement on the facts of this case would merely be to sow the seeds of

future litigation, and would unduly burden the defendant"); *United Paperworkers Intern. Union,*

*AFL-CIO Local 274 v. Champion Intern. Corp.*, 81 F. 3d 798, 805 (8th Cir. 1996) (denying

reinstatement after defendant presented a legitimate and substantial business justification for

opposing reinstatement).

   **C.  Plaintiff's Closing Argument Waived a Request for Instatement**

      Third, Plaintiff's attorney waived any right to instatement in her closing argument by

claiming that monetary damages were the only remedy that could compensate Plaintiff for not

becoming an MSP Trooper. At the end of the first part of her opening statement, Attorney

Messing detailed Plaintiff's alleged harms, including her argument that Plaintiff "lost the

opportunity to be a MSP Officer" for at least another 13 years. Trial Trans. Day 7, Part II at 13

(attached as Exhibit B). She then told the jury that there was no way "to go back in time and

change the events of 2011;" "the only method . . . to compensate [Plaintiff] is money." Ex. B at

14.  Plaintiff attempted to get as large a front pay award as possible by telling the jury that

money was the only potential solution for his lost opportunity to be a MSP Trooper.  Having

done that, Plaintiff cannot now claim a different remedy is actually preferred.  *Cf. Crellin*

*Technologies, Inc. v. Equipmentlease Corp.*, 18 F. 3d 1, 9 n.11 (1st Cir. 1994) (party cannot

disclaim statement made in closing argument); *South Port Marine LLC v. Gulf Oil Ltd. P'ship*,

73 F. Supp. 2d 17, 22 (D. Me. 1999) (overturned in part on other grounds) (plaintiff's lawyer

waived damages in excess of amount requested at closing argument); *Parrilla-Lopez v. U.S.*, 841

F. 2d 16, 20 (1st Cir. 1988) ("litigants are generally bound by the acts of their attorneys").

## II.     PREJUDGMENT INTEREST SHOULD NOT BE ADDED TO PLAINTIFF'S EMOTIONAL DISTRESS DAMAGES

Additionally, prejudgment interest is not appropriate on Plaintiff's emotional distress

award.  As one court in this district noted, "prejudgment interest is generally not awarded on

emotional distress damages." *Anderson v. Brennan*, 254 F. Supp. 3d 253, 262 (D. Mass. 2017).[2]

Nor should it be.  Prejudgment interest is necessary on back pay damages because Plaintiff lost

the time value of money on wages he should have received in the past.  Emotional distress

damages, however, do not compensate Plaintiff for money he was wrongfully denied; as such,

prejudgment interest is not necessary to make Plaintiff whole.  *See, e.g.*, *E.E.OC. v. Everdry*

*Mktg. and Mgmt., Inc.*, 556 F. Supp. 2d 213, 223-24 (W.D.N.Y. 2008) (noting that "awards of

prejudgment interest on emotional distress damages is not the norm for New York federal

courts;" such prejudgment interest is not necessary to make claimants whole); *Hall v. Terrell*,

---

[2] In the only case Plaintiff cites on this issue from this district, whether prejudgment interest applied to emotional distress awards was not a contested issue; the Court simply assumed it did and defendant apparently did not dispute this. *See Trainor v. HEI Hospitality LLC*, 2012 WL 119597, *7 (D. Mass. Jan. 13, 2012).

648 F. Supp. 2d 1229, 1232 (D. Colo. 2009) ("Tenth Circuit precedent dictates that the Court not award prejudgment interest" on emotional distress damages; time value of money did not apply to emotional distress damages); *Thorncreek Apartments I, LLC v. Vill. of Park Forest*, 2015 WL 2444498, *9 (N.D. Ill. May 20, 2015) (noting that prejudgment interest could be awarded on back pay, but not for emotional distress) (citing *Daniels v. Pipefitters' Ass'n Loc. Union No. 597*, 945 F. 2d 906, 924 (7ᵗʰ Cir. 1991)); *Barnett v. Bd. of Cnty. Comm'rs of Cnty. of Montrose*, 2015 WL 5315183, (D. Colo. Sept. 11, 2015) (declining to award prejudgment interest; award of such interest on back pay sufficiently compensated plaintiff); *McMahon v. Metro. Gov't of Nashville and Davidson Cnty., Tennessee*, 2016 WL 10650816, *7 (M.D. Tenn. Sept 7, 2016) (noting that courts that had analyzed multiple cases determined that prejudgment interest should not be awarded on emotional distress damages); *Lensing v. Potter*, 2013 WL 209604, *5 (W.D. Mich. Jan. 17, 2013) ("The emotional injuries suffered by [plaintiff] were given a monetary value by the jury at the close of trial. [Plaintiff], however, did not lose the time value of that money. Therefore, there is no basis for awarding prejudgment interest on that award").

## III.   PREJUDGMENT INTEREST SHOULD BE CALCULATED USING THE FEDERAL RATE

Since Plaintiff prevailed on a federal law claim rather than a state law claim, the prejudgment interest added to his back pay award should be calculated using the federal interest rate rather than the Massachusetts state rate. *See* 28 U.S.C. § 1961 (prescribing that interest should be calculated "at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding the date of judgment").

While Title VII does not mandate the use of a particular pre-judgment interest rate, Plaintiff cites to no case in his brief where a Massachusetts court used the state interest rate for

prejudgment interest on a Title VII claim.[3]  In contrast, there are multiple cases where a

Massachusetts court used the federal interest rate to calculate prejudgment interest on a Title VII

claim.  *See, e.g.*, *Troy v. Bay State Comput. Grp., Inc.*, 1997 WL 102498, *8-9 (D. Mass. March

4, 1997) (vacated on other grounds) (concluding that 12 percent prejudgment interest rate was

too high and instead using federal rate encoded at 28 U.S.C. § 1961 in Title VII case); *Denton v.*

*Boilermakers Local 29*, 673 F. Supp. 37, 51 (D. Mass. 1987) (awarding prejudgment interest in

Title VII case using federal interest rate since it was a "fair measure of the value of money");

*Eldred v. Consol. Freightways Corp. of Delaware*, 907 F. Supp. 26, 28 (D. Mass. 1995)

(awarding prejudgment interest on Title VII claim using federal rate since plaintiff prevailed on a

federal claim); *see also Orr v. Mukasey*, 631 F. Supp. 2d 138, 157 n.5 (D.P.R. 2009) (awarding

prejudgment interest in Title VII case using federal rate in 28 U.S.C. § 1961); *McKelvy v. Metal*

*Container Corp.*, 854 F. 2d 448, 453 (11th Cir. 1988) (interest rate for prejudgment interest on

back pay awards on Title VII depends on prime rates calculated in accordance with 28 U.S.C.

§ 1961); *Mansker v. TMG Life Ins. Co.*, 54 F. 3d 1322, 1331 (8th Cir. 1995) (28 U.S.C. § 1961

"provides the proper measure for determining rates of both prejudgment and postjudgment

interest" in cases arising under a federal statute).  This Court should follow the lead of these

Massachusetts and other courts and utilize the federal interest rate for Plaintiff's federal claim.

Using the federal interest rate rather than the state rate also makes sense given the

purpose of Title VII to make Plaintiff whole.  The federal rate is based on the actual Treasury

yield during the time period in question, thus providing a good approximation for how much

interest Plaintiff could have received had he been paid his back pay at the time.  *See* 28 U.S.C.

---

[3] Plaintiff also misstates the case law by claiming that this Court "*should*" look to state law for guidance.  Mot. at 4.  At most, the cases say the Court *can* look, though, as shown above, most courts use the applicable federal rate.

§ 1961; *Cottrill v. Sparrow, Johnson & Ursillo, Inc.*, 100 F. 3d 220, 225 (1st Cir. 1996) (abrogated on other grounds) (upholding use of federal interest rate and noting that federal rate "is an objective measure of the value of money over time"); *Parexel Int'l Corp. v. Feliciano*, 2008 WL 5467609, *2 (E.D. Pa. 2008) (federal interest rate is desirable because it is "a suitable approximation of the available return for a typical risk-free investment during the back pay period") (internal citation omitted); *Davis v. Rutgers Cas. Ins. Co.*, 964 F. Supp. 560, (D.N.J. 1997) (federal rate in 28 U.S.C. § 1961 "has been found by Congress and by the marketplace to be a suitable approximation of the available return").  In contrast, the state interest rate is simply a flat rate that does not take into account any economic factors.  *See* G.L. c. 231 § 6B; *see also Kelley v. City of Albuquerque*, 2006 WL 1305038, *5 (D.N.M. Apr. 12, 2006) (awarding state prejudgment interest rate of 10% would be an improper windfall for plaintiff since state rate was "untethered to the economic currents"); *Krystal Co. v. Caldwell*, 2012 WL 876793, * (E.D. Tenn. March 13, 2012) (state rate of 10% would be an impermissible windfall; federal rate satisfies the goals of Title VII).

## IV.    PLAINTIFF'S PREJUDGMENT INTEREST ON BACK PAY SHOULD BE CALCULATED BY YEAR

Finally, Plaintiff's prejudgment interest award on his back pay award should be calculated based on the year the back pay would have been earned.  Plaintiff's proposed judgment form assumes that he would have received his entire back pay award ($79,000) as of December 2015 and calculates his yearly prejudgment interest from that date based on that figure.  The parties have agreed, however, that Plaintiff would not actually have received his entire back pay award in December 2015; indeed, the parties have stipulated to Plaintiff's back pay damages by year.  *See* Ex. C (Stipulation of Fact Relative to Back Pay Damages).  Calculating the prejudgment interest based on when Plaintiff would have actually earned the

extra salary more accurately reflects his lost time value of money and thus more accurately

places him in the position he would have been in had he been hired.  MSP thus respectfully

submits that prejudgment interest should be calculated from the year Plaintiff would have earned

his additional back pay.[4]

## CONCLUSION

Based on the foregoing, MSP respectfully requests that this Court deny Plaintiff

instatement, apply no prejudgment interest to Plaintiff's emotional distress award, and apply the

federal interest rate in calculating the prejudgment interest on Plaintiff's back pay award on a

yearly basis.

---

[4] Assuming the same February 13, 2019 entry of judgment date as Plaintiff and the federal rate as described in 28 U.S.C. § 1961 for each year, Plaintiff would receive $4,208.92 in prejudgment interest on his back pay award.  This is broken down as follows:  Plaintiff would have earned $10.93 in interest in 2013 on his $8,404.95 in back pay damages.  He would have earned $35.04 in compound interest in 2014 on his 2013-2014 damages, he would have earned $171.04 in compound interest in 2015 on his 2013-2015 damages, he would have earned $410.30 in compound interest in 2016 on his 2013-2016 damages, he would have earned $1,249.34 in compound interest in 2017 on his 2013-2017 damages, he would have earned $2,075.58 in compound interest in 2018 on his 2013-2018 damages, and he would have earned an additional $256.69 on his total back pay damages from January 1-February 13, 2019.  That results in total prejudgment interest of $4,208.92 on Plaintiff's back pay award.  If the Court instead utilized the state interest rate (which Defendant objects to), the total prejudgment interest on Plaintiff's back pay award would be $36,541.96.

Respectfully submitted,

MASSACHUSETTS STATE POLICE

By its attorney,

MAURA HEALEY
ATTORNEY GENERAL,

/s/ Nicholas W. Rose
Dennis N. D'Angelo, BBO No. 666864
Nicholas W. Rose, BBO NO. 670421
Assistant Attorneys General
Government Bureau/Trial Division
One Ashburton Place, Room 1813
Boston, MA  02108
(617) 727-2200
dennis.dangelo@state.ma.us
nicholas.rose@state.ma.us

Date:  January 30, 2019

## CERTIFICATE OF SERVICE

I, Nicholas W. Rose, Assistant Attorney General, hereby certify that I have this day, January 30, 2019, served the foregoing upon the attorneys of record for all parties by filing it through the ECF system.

/s/ Nicholas W. Rose_____
Nicholas W. Rose