**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| ORLANDO RILEY<br><br>Plaintiff,<br><br>v.<br><br>MASSACHUSETTS STATE POLICE<br><br>Defendant. | C.A. 1:15-cv-14137-DJC |

**DEFENDANT'S REPLY MEMORANDUM OF LAW**
**IN SUPPORT OF ITS RENEWED MOTION FOR JUDGMENT**
**AS A MATTER OF LAW OR, IN THE ALTERNATIVE, FOR A NEW TRIAL**

Defendant Massachusetts State Police ("MSP") respectfully submits this reply memorandum of law in support of its renewed motion for judgment as a matter of law, or, in the alternative, for a new trial. The majority of Plaintiff Orlando Riley's ("Riley") arguments in his Opposition ("Opp.") are addressed in MSP's opening memorandum of law ("Mem."); MSP submits this Reply to address a few additional points.

**I.      MSP IS ENTITLED TO JUDGMENT AS A MATTER OF LAW**

**A.  RILEY DID NOT ESTABLISH A PRIMA FACIE CASE BECAUSE HE WAS NOT SIMILARLY SITUATED TO ANY HIRED CANDIDATE**

Much of Riley's Opposition (just like much of his trial evidence) concerns alleged problems with MSP's background system as a whole and complaints about how Trooper Lima supposedly implemented that system as a way to purportedly demonstrate pretext. While MSP disagrees with Riley's claims for the reasons outlined in its opening brief, those critiques gloss over something more fundamental, namely that Riley did not establish his prima facie case at trial. *Cf.* Jury Instructions at 21 (Riley had to first prove his prima facie case). Regardless of any

1

supposed problems with MSP's background system in general, Riley did not demonstrate in this particular case that the position to which he applied was filled by a person "possessing similar or inferior qualifications." *Cruz v. Mattis*, 861 F.3d 22, 25 (1st Cir. 2017); Jury Instructions at 21; *see also* Mot. at 3 (collecting cases). As a result, MSP is entitled to judgment as a matter of law.

Both parties agree that the central issue is whether MSP genuinely believed Riley to be untruthful during the Application process. *See* Opp. at 7. MSP presented contemporaneous documentary evidence demonstrating that both Lima and the Review Board considered Riley to be untruthful at the time of his Application. See Tr. Ex. 38 at 12 (Lima's background investigation found Riley to be untruthful); Tr. Ex. 43 (the Review Board eliminated Riley for being untruthful during the Application process). Lima and Butler reaffirmed this during their testimony at trial. Conversely, Riley produced no contemporaneous documents at trial suggesting that Lima and the Review Board instead actually thought Riley was telling the truth. Nor did any MSP witness testify that their concerns about Riley's truthfulness were not genuine. Instead, Riley speculates that MSP did not actually believe its own stated reasons for rejecting his candidacy and claims that the jury was free to disregard MSP's proffered evidence. Neither argument is sufficient to defeat MSP's motion. *See Invest Almaz v. Temple-Inland Forest Products Corp.*, 243 F. 3d 57, 76 (1st Cir. 2001) (a plaintiff cannot rely on speculation); *Redgrave v. Boston Symphony Orchestra, Inc.*, 855 F. 2d 888, 896 (1st Cir. 1988) ("In examining the evidence, however, we must not neglect uncontradicted evidence offered by the other party"); *Santiago-Negron v. Castro-Davila*, 865 F. 2d 431, 445 (1st Cir. 1989) (same).

As outlined in more detail in MSP's opening brief, one of the primary reasons MSP believed Riley to be untruthful was his failure to disclose the Soares investigation. Mot. at 4-5. This belief was buttressed by the fact that even after undisputedly learning he had submitted a

false statement on his Application, Riley did not correct that mistake in the months prior to his interview. Mot. at 5. While other applicants may not have corrected their applications either (Opp. at 9), Riley was the only candidate who got actual notice that he had something to fix on his Application, learning three weeks later that he had falsely answered a key question. Moreover, Riley was also the only candidate who affirmatively reached out to correct his Application on another subject. *See* Tr. Ex. 26 (email from Riley to Lima fixing incorrect phone numbers submitted on his Application). Riley's own actions show he knew he could update his Application materials if necessary; he simply chose not to. MSP reasonably interpreted that as untruthfulness.

Similarly, MSP also believed Riley to be untruthful based on his Questionnaire answers. Mot. at 5. Riley's Opposition rehashes why he did not believe he answered the Questionnaire falsely. Opp. at 8-10.[1] The correct focus for the jury (and this Court), however, is not what Riley thought, but whether MSP reasonably believed Riley lied on his Questionnaire. By signing his Questionnaire, Riley certified that his answers were true and complete, and that providing false, incomplete, or misleading information could result in his disqualification. Tr. Ex. 30 at 1. Despite so signing, MSP believed that Riley answered at least two questions falsely, including whether his name was in any police case report file (it was in both the Soares and Stallings case report files) and whether his Application was accurate and complete (Riley admits it was not at the time he signed the Questionnaire). *See* Tr. Ex. 30 at 5. Riley's testimony that he was confused by or misunderstood the questions is irrelevant because MSP did not know this; as

---

[1] Riley's claim that Butler somehow "admitted" (Opp. at 9) that one of the questions on the Questionnaire was ambiguous is inaccurate. Counsel's notes show Butler affirmed on both cross and re-direct that Riley made at least two misstatements on the Questionnaire and that the Questionnaire was part of what the Review Board considered in finding Riley to be untruthful.

Riley admits, he did not ask Lima (or anyone at MSP) about what the questions meant. Instead, he interpreted the key questions himself in a manner that allowed him not to have to disclose the Soares (or Stallings) investigation. MSP again reasonably interpreted that as untruthfulness.

Finally, MSP also believed Riley was untruthful because he failed to disclose his prior unsuccessful application to the Providence Police Department. Mot. at 5. Riley's only response in his Opposition is that the question was misleading. Opp. at 10. Riley ignores, however, Lima's uncontroverted testimony that he directly asked Riley during the interview whether Riley had applied to any other police forces and Riley said "No."[2] MSP reasonably interpreted Riley's failure to disclose his Providence application as another example of his untruthfulness.

Given MSP's genuine concerns about Riley's untruthfulness, Riley needed to identify as part of his prima facie case an applicant to the 80th RTT who was hired despite similar truthfulness concerns. Mot. at 6. The only such possible candidate at trial was J.H. Riley, however, did not provide any evidence demonstrating similar untruthfulness concerns about J.H. either at trial or in his Opposition. Indeed, J.H. affirmatively disclosed his biggest potential "red flag", detailing his prior drug use on his Application. Tr. Ex. 9 at 10. The only "issues" that Riley identifies with respect to J.H. are that J.H. initially did not list his high schools on his Application[3] (which J.H. corrected during his interview) and that Lima did not specifically reference a particular employment review or J.H.'s credit card debt in his background

---

[2] Riley was present for this testimony and had an opportunity to refute it during his own testimony. He did not do so.

[3] Riley tries to make J.H. seem like a proper comparator by arguing that both he and J.H. omitted their high schools on their original application. Opp. at 10. The undisputed contemporaneous documents, however, show that Lima's primary concern regarding Riley's high schools was not that Riley originally omitted them, but that Lima believed that Riley lied as to the reason he left Bishop Stang High School and that, even after being given the same opportunity as J.H. to add his high schools during his interview, Riley still failed to disclose that he attended Dartmouth High School. *See* Tr. Ex. 38 at 10-11; Tr. Ex. 48 at 3.

investigation report. None of these impact J.H.'s trustworthiness; J.H. immediately corrected his mistake when it was identified and had no control over what Lima put in his report. J.H. also affirmatively disclosed his prior drug use. Tr. Ex. 9 at 10. Riley, in contrast, waited months to disclose the Soares investigation, falsely answered the Questionnaire despite knowing he was a subject of the Soares (and Stallings) investigation, and never disclosed his Providence Police Department application. J.H. is therefore not an "apples to apples" comparator to Riley and Riley failed to make his prima facie case.

Perhaps sensing that J.H. and himself were not similarly situated, Riley focuses on the deficiencies of Lima's other rejected candidates. Opp. at 3, 9, 10. Even if Riley is correct that these candidates were "worse" than him, he cannot use their experience to make his prima facie case because they were not hired instead of him. *See Cruz*, 861 F.3d at 25. Moreover, Riley's focus on A.G. and A.P. (Opp. at 3, 9, 10) is counterproductive to his case; both were white candidates who were deemed untruthful and were rejected (just like Riley). *See* Tr. Ex. 44 at 11 (labeling A.P. as "untruthful"); Tr. Ex. 37 (rejecting A.G. for being "untruthful on his application regarding drug use"). If anything, A.G. and A.P.'s experiences demonstrate that untruthfulness was indeed an automatic disqualifier, regardless of a candidate's race. *See also* Tr. Ex. 52 at 2-3 (listing untruthfulness as an automatic disqualifier).

Because Riley did not produce evidence at trial showing that MSP hired any similarly situated candidate who it had truthfulness concerns about, he has failed to make his prima facie case and judgment as a matter of law should enter in favor of MSP.

### B. RILEY FAILED TO PROVE EMOTIONAL DISTRESS DAMAGES BY A PREPONDERANCE OF THE EVIDENCE

Even if MSP is not entitled to judgment as a matter of law on Riley's claim in its entirety, it is entitled to judgment as a matter of law with respect to his emotional distress award. As

Riley's Opposition admits, the only testimony supporting his emotional distress came from interested parties. Opp. at 15. Moreover, each of Riley's friends and family members who testified on his behalf acknowledged that Riley had multiple other factors affecting his mental health at the time (including his brother's PTSD and Riley's own alleged ongoing mistreatment at the New Bedford Police Department ("NBPD")). MSP cannot be held liable for emotional distress caused by these outside factors. *See Stonehill College v. MCAD*, 441 Mass. 549, 576 (2004) ("Emotional distress existing from circumstances other than the actions of [defendant] . . . is not compensable"). Riley chose not to provide objective evidence from any medical or mental health professional to demonstrate that his alleged emotional distress came from failing to get a job with MSP rather than his brother's suffering or Riley's own troubles at NBPD. Riley's own actions actually suggest the opposite. Riley did not seek mental health counseling in 2011 after he was rejected by MSP. Instead, he sought it two years later, after his brother's injury and approximately a month after his latest troubles at NBPD. Given the lack of objective evidence and Riley's own actions, it is improper speculation to conclude that Riley's emotional distress was caused by MSP instead of these other issues. MSP should thus be granted judgment as a matter of law on Riley's emotional distress award.

**II.     IN THE ALTERNATIVE, MSP IS ENTITLED TO A NEW TRIAL**

Even if this Court does not grant MSP judgment as a matter of law, it should still grant MSP a new trial. As outlined in more detail in MSP's opening memorandum of law, the same reasons supporting granting judgment as a matter of law also support granting MSP a new trial. A new trial is further supported by Riley's failure to disclose the Stallings investigation (Mot. at 14-16) and that Dr. Weisen presented testimony at trial that was not sufficiently tethered to the specific circumstances of Riley's Application. Mot. at 17-18.

It is undisputed that Riley was a subject of the Stallings investigation and that he never disclosed this investigation to MSP. Riley's Opposition claims that the jury could have decided that Riley did not understand he was the subject of the Stallings investigation because "[c]ontemporaneous NBPD documents [did] not so inform Riley." Opp. at 16-17. This argument is simply wrong. Even ignoring all the 2006 documents that should have put Riley on notice he was a subject of the Stallings investigation (Mot. at 14), Riley was explicitly told in writing on May 10, 2010 (less than a year before submitting his Application) that "[t]he investigation into the complaint filed against you in September of 2006 . . . has been completed." Tr. Ex. 11. He admits he received the email and reviewed it. Any determination by the jury that Riley could read the May 10, 2010 email and conclude that he was not a subject of an internal investigation is against the weight of the evidence.

Moreover, as Riley does not dispute in his Opposition, his failure to disclose the Stallings investigation debunks his claim that he innocently failed to originally disclose the Soares investigation. Mot. at 15-16. Riley gave the exact same excuse for not disclosing both investigations – that he thought he was a witness rather than a subject. His willingness to make that claim with regards to the Stallings investigation in the face of contemporaneous documentary evidence to the contrary shows that his Soares excuse was similarly suspect. Riley's knowledge of the Stallings investigation also discredits his claim (raised for the first time at trial) that he did not realize he was the subject of the Soares investigation because the NBPD did not follow proper internal investigation procedures. The NBPD, however, used these same types of procedures in conducting the Stallings investigation as well, and Riley knew he was a subject of that investigation. In short, Riley's failure to disclose the Stallings investigation undermines his protestations of innocence with respect to the Soares investigation.

A new trial is also appropriate because Dr. Wiesen's testimony at trial primarily amounted to disparate impact testimony. Mot. at 17-18. As both sides agree, the critical question at trial was whether MSP reasonably believed that Riley was untruthful. Opp. at 7. All parties (including Dr. Wiesen) agree that if Riley was untruthful on his application materials, he should have been disqualified. Riley provided no evidence at trial that white candidates with truthfulness concerns were treated differently than African-American candidates with similar questions. Nor did Dr. Wiesen. Instead, Dr. Wiesen testified (and Riley's counsel used a chalk of this testimony during her closing) regarding the overall experience of African-American candidates, regardless of whether there were any concerns regarding their truthfulness (and even regardless of whether Lima did their background investigations). This generalized evidence was not sufficiently tethered to the critical question in this case. Rather than informing the jury on how MSP treated candidates with truthfulness concerns, Dr. Wiesen's testimony instead improperly shifted the focus to the experience of African-American candidates in general and away from Riley's experience in particular.

Riley claims that Dr. Wiesen's testimony demonstrated that Riley's background investigation results could not constitute a "legitimate, non-discriminatory reason" for his rejection because the system was so biased. Opp. at 19. Dr. Wiesen did not testify to any such conclusion, however. Wiesen did not claim that there was such a fundamental flaw in MSP's background investigation system that Lima and the Review Board could not make a reasonable interpretation as to whether Riley was truthful during his Application process. Nor could he. The most he could conclude was the MSP's background investigation system may have had an adverse impact on African-American candidates in general. Not only is such a conclusion not specific enough to the central question here to be relevant, this conclusion also improperly made

MSP's background investigation system in general the focus of the trial, rather than Riley's specific experience.  As such, MSP should be granted a new trial without Dr. Wiesen's testimony.

## CONCLUSION

For the foregoing reasons and those contained in MSP's opening memorandum of law, MSP respectfully requests that it be granted judgment as a matter of law on Riley's claim against it. To the extent that motion is denied, MSP requests that it be granted judgment as a matter of law on Riley's claim for emotional distress damages.  To the extent that motion is denied, MSP requests that it be granted a new trial.

Respectfully submitted,

MASSACHUSETTS STATE POLICE

By its attorney,

MAURA HEALEY
ATTORNEY GENERAL,

/s/ Nicholas W. Rose
Dennis N. D'Angelo, BBO No. 666864
Nicholas W. Rose, BBO NO. 670421
Assistant Attorneys General
Government Bureau/Trial Division
One Ashburton Place, Room 1813
Boston, MA  02108
(617) 727-2200
dennis.dangelo@state.ma.us
nicholas.rose@state.ma.us

Date:  February 13, 2019

## **CERTIFICATE OF SERVICE**

    I, Nicholas W. Rose, Assistant Attorney General, hereby certify that I have this day, February 13, 2019, served the foregoing upon the attorneys of record for all parties by filing it through the ECF system.

                                                                 /s/ Nicholas W. Rose_____
                                                                 Nicholas W. Rose