## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| **ORLANDO O. RILEY,** | ) | |
| **Plaintiff** | ) | **Civil Action No.: 1:15-CV-14137-DJC** |
| | ) | |
| **v.** | ) | |
| | ) | |
| **MASSACHUSETTS DEPARTMENT** | ) | |
| **OF STATE POLICE,** | ) | |
| **Defendant** | ) | |
| | ) | |

## PLAINTIFF'S MEMORANDUM IN SUPPORT OF INITIAL MOTION
## FOR ATTORNEYS FEES AND COSTS

Plaintiff Orlando O. Riley ("Riley" or "plaintiff") has moved this Court for reimbursement of his reasonable attorneys fees and costs as the prevailing party, pursuant to fee-shifting provisions of Title VII, 42 U.S.C. §2000e-5(k), which provide that "[i]n any action or proceeding under this subchapter the court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee (including expert fees) as part of the costs."

## I.   PLAINTIFF IS THE PREVAILING PARTY IN THIS ACTION

Plaintiff brought a single count of discrimination in this case pursuant to Title VII.  After defeating defendant's motion for summary judgment and motion to strike his expert, plaintiff tried his case to a jury, which, after a seven-day trial, returned a verdict in plaintiff's favor and awarded him back pay and damages for emotional distress while rejecting defendant's after-acquired evidence defense.  Plaintiff then defeated defendant's post-trial motions to overturn the jury's verdict. He succeeded on his primary goal, in winning his motion for instatement into defendant's next available training academy.  Plaintiff is the prevailing party in this action by any definition of the term: "[p]laintiffs may be considered 'prevailing parties' for attorney's fees purposes if they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit."

Hensley v. Eckerhart, 461 U.S. 424, 433 (1983)(quoting Nadeau v. Helgemoe, 581 F.2d 275, 278-79 (1st Cir. 1978)).  Riley has achieved essentially all of the "benefit [he] sought in bringing suit:" he received all of the back-pay he had lost – the parties stipulated to that amount, see Trial Ex. 68 ($78,261.70 stipulated), and the jury's back-pay award was virtually identical.  Doc. 245 ($79,000). He was awarded damages for emotional distress as he had asked.  Although the jury did not award front pay, such an award was mooted by this Court's instatement order, because front pay is a substitute for instatement. Selgas v. Am. Airlines, Inc., 104 F.3d 9, 12 (1st Cir. 1997).  His equitable award is particularly significant as encapsulating the chief goal of Title VII. Riley is entitled to fees for all work done on all aspects of his case.

## II.     THE ATTORNEYS FEES AND COSTS PLAINTIFF SEEKS ARE REASONABLE

The purpose of a Title VII award of attorneys' fees is to encourage private litigation to serve both individual justice and vindicate public policy considered by Congress "of the highest priority." Newman v. Piggie Park Enter., 390 U.S 400, 402 (1968); see also Joyce v. Town of Dennis, 720 F. 3d 12, 31 (1st Cir. 2013)(statutory fee-shifting provisions reflect legislative judgment that public as a whole has interest in vindicating rights conferred by statute, beyond any gain to particular plaintiff) citing Hensley, 461 U.S. at 444 n.4. Here, in winning instatement, back pay and damages, and in showcasing racial injustice in the hiring practices of a public employer, Riley has served both individual and public ends.  See, e.g., City of Riverside v. Rivera, 477 U.S. 561, 574-75 (1986)(fees awarded in civil rights cases not based on amount of monetary relief obtained, but on fact that public benefit advanced, such that all time reasonably expended should be compensated).

In determining a "reasonable" fee, the Court must apply a multi-factor test, first determining a "lodestar" amount and then, if necessary, adjusting that amount to ensure that it is reasonable. Pennsylvania v. Del. Valley Citizens' Council for Clean Air, 478 U.S. 546, 564-65 (1986); Burke v. McDonald, 572 F.3d 51, 56 n.5 (1st Cir. 2009).  To calculate the lodestar , this Court must determine

"the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate."
Gay Officers Action League v. Puerto Rico, 247 F.3d 288, 295 (1st Cir. 2001)(quoting Hensley, 461
U.S. at 433).  The party seeking an award of attorneys' fees must document the hours expended,
with contemporaneous time records,  and the hourly rates charged.  Torres-Rivera v. O'Neill-Cancel,
524 F.3d 331, 340 (1st Cir. 2008); Grendel's Den, Inc. v. Larkin, 749 F.2d 945, 952 (1st Cir. 1984).

### A.      REASONABLE HOURS EXPENDED

As set forth in more detail in the Affidavit of Ellen J. Messing ("Messing Aff."), Riley seeks
reimbursement for 2,551.20 hours of work by his attorneys and paralegals, subject to a 20% across-
the-board downward adjustment, plus  $57,740.93 in costs, for a total of $1,094,682.93 in attorneys'
fees and costs.  These fees and costs were incurred in drafting Riley's amended complaint, his
opposition to defendant's motion to amend its answer, and his oppositions to defendant's motions
for summary judgment and to strike his expert report; in discovery practice, including significant
discovery motions; in 12 depositions, including third-party depositions and multi-day depositions of
the principal witnesses; in pursuit of, and opposition to, various motions in limine; in trial
preparation, including use of an informal focus group; in a seven-day trial with 18 witnesses; in
oppositions to post-trial motions; in preparation of the instant fee petition; and, subject to leave of
this Court, in pursuit and defense of this petition.

As indicated in the Messing Affidavit and attached billing records, Riley is not seeking
reimbursement for all of the fees and costs incurred in pursuit of the foregoing activities.  In an
effort to reduce the burden on this Court, he has agreed to a reduced reimbursement for the fees
and costs incurred by his expert in preparing for and attending his deposition.[1] In addition, his
counsel have exercised careful billing judgment to reduce the amount he seeks from $1,574,240.93

---

[1] Specifically, plaintiff has agreed to forgo reimbursement of $1,312.11 for Dr. Wiesen's travel time (7.5 hours at $175
per hour).  In addition defendant has agreed to compensate plaintiff for some of the costs of Dr. Wiesen's deposition
and deposition preparation ($7,743.75), as required by Fed. R. Civ. P. 26(b)(4)(E).

to $1,353,918.43, or approximately 14%, to discount work that was excessive, duplicative or unnecessary.  For example, he has eliminated charges for time spent conducting legal research, drafting legal memoranda, preparing for depositions, summarizing depositions and similar tasks that exceeded a reasonable amount of time given the nature of the task; many conferences between or among attorneys; time spent correcting errors (for example re-filing already-filed documents under seal); preliminary tasks and background research.  Gay Officers Action League, 247 F.3d at 295 (time sought should be reduced by hours that are "duplicative, unproductive, or excessive").  He then discounted that reduced amount further via an across-the-board reduction of 20% to approximate an accounting for work that did not produce a useful result, such as unsuccessful aspects of discovery motions and motions in limine.  Nevertheless, certain realities of the case necessitated the substantial expenses that remain.

1.     **Discovery**

Discrimination cases are inherently difficult to prove.  In order to succeed, the plaintiff must prove the existence of an illegal motive, and must rely primarily on circumstantial evidence. Chadwick v. WellPoint, Inc., 561 F.3d 38, 46 (1st Cir. 2009); Thomas v. Eastman Kodak Co., 183 F.3d 38, 57-58, n. 12 (1st Cir. 1999).  Almost all of that evidence is typically in the possession of the defendant.  This case was no different.  Defendant possessed all evidence regarding the background investigations of all potential comparators, all evidence regarding the nature, methodology, design, functioning and administration of the background investigation process at the heart of this matter, and all evidence regarding defendant's internal deliberations.  Nevertheless, discovery into these matters was ferociously resisted by defendants as summarized below.

a.     **Successful Discovery Efforts**

Defendant resisted providing basic comparator evidence, for example, by redacting the background investigation reports of the other individuals investigated by Lima to such a degree as to

render them unintelligible, and without providing any privilege log as required.  It even refused to provide the identities of the comparators investigated by Lima.  This required plaintiff to file a motion to compel (Doc. 37), which defendant opposed, to which plaintiff replied.  Only on the eve of the motion hearing (see Doc. 54, n. 1) did defendant provide less-redacted comparator files – something it could have done weeks previously and without motion practice.  A Magistrate Judge's order, at plaintiff's instance, was required for defendant to produce a privilege log.  Doc. 54.

As to producing the identities of the comparators Lima investigated, defendant continued to resist doing so until it was ordered, after plaintiff filed and the parties briefed an Objection to the Magistrate Judge's order (Doc. 72) that had permitted their concealment.  See Doc. 113 (Court rules on plaintiff's Objection to Doc. 72, orders disclosure of names and addresses of comparators).  As a result of plaintiff's persistence on this issue, armed with this information, he was able to utilize a private investigator to find many of the comparators and interview them in order to assess their knowledge base, memory, and willingness to testify.  This process ultimately resulted in the subpoenaed testimony of one of the comparators – Aaron Grundy – whose testimony was valuable in plainly illustrating the double standards exercised by Lima in his consideration of plaintiff.

Plaintiff also successfully fended off defendant's attempt to intrude into his privileged mental health records during discovery.  See Docs. 44, 53 (respectively, defendant's motion to compel mental health records and Magistrate Judge order denying same).

### b.   Unsuccessful Discovery Efforts

Plaintiff's work on the unsuccessful aspects of his discovery motions should be compensated, notwithstanding the denial of some of those motions. The motions were well founded in long-established law and were fully merited.  Although not altogether successful, the successes that were achieved would not have been possible had plaintiff chosen not to contest defendant's inadequate discovery responses in the first place.  See Blum v. Witco Chemical Corp., 829 F.2d 367,

5

378 (3d Cir. 1987)(fee award should not be reduced in connection with unsuccessful motions: "the Supreme Court has rejected the notion that the fee award should be reduced 'simply because the plaintiff failed to prevail on every contention raised in the lawsuit'"), citing Hensley, 461 U.S. at 435; Sadowsky v. Ingersoll-Rand Co., 2005 U.S. Dist. LEXIS 26947, at *8 (W.D. Penn. Nov. 4, 2005)(declining to reduce fee award for fees associated with unsuccessful motion to compel); Martini v. Fannie Mae, 977 F. Supp. 482, 488 (D.D.C. 1997)(unsuccessful motion to compel led to benefits for plaintiff in litigation, fee award not reduced).  Nevertheless, recognizing that in some circumstances unsuccessful motions to compel are not compensable, plaintiff has reduced the lodestar amount he seeks across-the-board by 20% as noted.

### c.    Expert Report

Plaintiff retained expert Dr. Joel Wiesen who prepared an extremely thorough and exhaustive expert report, revised twice to take into account defendant's two successive revisions to statistical data regarding background investigation outcomes.  The report reviewed and analyzed every salient aspect of defendant's background investigation process.  In order to do so, Dr. Wiesen carefully reviewed plaintiff's and each comparator's application packets in detail.  He reviewed and analyzed all of the significant witnesses' depositions and multiple additional documents.  After doing so, he crafted a 39-page report that discussed the multiple inconsistencies in treatment between plaintiff and his comparators, and the substantial weaknesses in the background investigation process itself and how it was applied by Lima, all of which rendered the process highly susceptible to discriminatory bias.  Plaintiff's counsel spent a substantial amount of time working with Dr. Wiesen to develop paper and deposition discovery necessary to acquire data for his report; discussing the significance of defense responses to that discovery; and responding to Dr. Wiesen's factual inquiries and inquiries about legal issues affecting his report.

In addition, after plaintiff disclosed the report to defendant, defendant initially subpoenaed

Dr. Weisen's deposition <u>duces tecum</u>.  This required a substantial amount of time on counsel's part working with Dr Wiesen to assemble the documents subpoenaed.  This was necessary even though after Dr. Wiesen's initial deposition date was rescheduled, defendant re-subpoenaed his deposition, this time <u>without</u> requesting documents.

Dr. Wiesen's ultimate testimony at trial was instrumental in plaintiff's victory because it demonstrated for the jury how the subjective, <u>ad hoc</u> nature of the background investigation process likely resulted in biased results and that Riley's rejection was consistent with an overall pattern of biased exclusion of African-Americans. This undercut defendant's claim that Riley's non-selection was the outcome of an objective and good faith background investigation process. Plaintiff should be compensated for all of his time spent assisting Dr. Wiesen to prepare his report, respond to defendant's document requests, and prepare for deposition.  <u>See</u>, <u>e.g.</u>, <u>Specialty Retailers, Inc. v. Main St. NA Parkade, LLC</u>, 804 F. Supp. 2d 68, 74 (D. Mass. 2011)(in contract with fee-shifting provision, awarding attorney's fees for time spent preparing expert witness); <u>Estate of McIntyre v. United States</u>, 739 F. Supp. 2d 70, 76 (D. Mass. 2010)(same; FTCA case).

## 2. <u>Defendant's Motion for Summary Judgment and Motion to Strike</u>

Plaintiff spent substantial time opposing defendant's massive motion for summary judgment and its motion to strike his expert witness.  For example, defendant's motion for summary judgment (Doc. 118) was supported by <u>232</u> purportedly <u>un</u>disputed material facts (Doc. 120), 69 exhibits (Docs. 121-1 – 121-69), a 31-page supporting memorandum (Doc. 119) and a 10 page reply (Doc. 148).  Each of defendant's 232 purportedly undisputed material facts required analysis and, if necessary, a response, together with supporting exhibits.  The same was true of the 69 exhibits defendant included.  In opposition to defendant's motion, plaintiff prepared a 30-page memorandum and a responsive statement of facts.  After hearing, plaintiff submitted an additional brief regarding defendant's liability for Lima's actions (Doc. 164), urging a position that this Court

ultimately adopted.  In addition, he filed a motion for further discovery pursuant to Fed. R. Civ. P. 56(d) (Doc. 128), and a reply (Doc. 147) in response to defendant's opposition to that motion.

Defendant filed a motion to strike Dr. Wiesen's expert report (Doc. 123), which plaintiff opposed and to which defendant replied.  Opposing this motion required substantial additional briefing simultaneous with plaintiff's efforts to oppose summary judgment.

On May 24, 2018, this Court denied defendant's motion for summary judgment and motion to strike.  Doc. 170.  Its denial of summary judgment was premised in part on material in Dr. Wiesen's report.  Doc. 170, at 18.  The Court also ruled that defendant's liability, if any, for Lima's actions would be predicated on agency principles, consistent with the position urged by plaintiff. The Court further held that plaintiff's Rule 56(d) motion was moot in light of its ruling denying defendant's motion for summary judgment.  Doc. 170.  Plaintiff should be compensated for all of his work in accomplishing these excellent results.

      **3.**     <u>**Trial Preparation**</u>

      **a.**     **Witnesses**

Plaintiff offered testimony from 17 witnesses during his seven-day trial and examined defendant's lone witness.  While much of the testimony was brief, each had an essential role in supporting the jury's verdict.  The adverse witnesses plaintiff presented (Lima, Butler, Christiansen, McGinn) and defendant's witness (Flynn) helped to demonstrate the <u>ad hoc</u>, subjective nature of the application process and the double standards to which Riley, in contrast with his white comparators, was subjected.  As noted, the testimony of Grundy underscored those characteristics of the process. The testimony of New Bedford Police Union witnesses Conti and Ledo helped to corroborate plaintiff's testimony that he had not misrepresented his disciplinary history in the New Bedford Police Department, and that Lima had been so informed before writing a report saying the opposite. Former supervisors Hebert and Garcia corroborated plaintiff's claim that in contrast to other

comparators, Lima did not make any real effort to speak with Riley's job references. Witnesses Rebelo (New Bedford High School), Ruginis and Wood (Bishop Stang High School) provided essential evidence corroborating Riley's account of his academic history and undermining the credibility of Lima's account of what the schools told him about that history. Dr. Wiesen further underscored the subjective and unreliable nature of the background investigation process and presented statistical evidence of its discriminatory character. Family/friend witnesses Phillips, C. Riley and Feliciano each provided credible evidence of substantial emotional distress, supporting plaintiff's own testimony on the subject.

All of the witness testimony was the result of substantial and essential preparation. Defense-associated witnesses were deposed in anticipation of trial. They were sophisticated witnesses, all of whom were ably represented by counsel (Lima by his own attorney, the rest by the Attorney General), and one (Christiansen) was an attorney himself. As such, they required a great deal of preparation in advance of their examination as hostile witnesses. A private investigator was hired to find and recruit potential comparator witnesses, leading to Grundy's testimony. Friendly witnesses were interviewed and prepared in person by counsel. Neutral third-party witnesses such as Rebelo, Wood and Ruginis were all were represented by their own counsel, making dealings with them more time-consuming, including efforts to secure their cooperation in the first place to provide affidavits and ultimately testify, and efforts to obtain various school document exhibits through them. Plaintiff's expert was required to review discovery materials and draft an expert report, and as discussed herein, was the subject of multiple unsuccessful attempts to exclude the evidence he offered. Plaintiff should be compensated for this work. See, e.g., Dixon v. International Bhd. of Police Officers, 434 F. Supp. 2d 73, 82-83 (D. Mass. 2006)(awarding fees for witness preparation); Williams v. Boston Sch. Comm., 709 F. Supp. 27, 28-29 (D. Mass. 1989)(same; HCPA case); Gilchrist v. Gaunt, 1984 U.S. Dist. LEXIS 19830, at *3 (D. Mass. Feb. 2, 1984)(witness preparation

is compensable legal work; §1983 case).

        **b.**      **Focus Group**

Plaintiff also shaped his trial strategy through the use of an informal focus group, which entailed recruiting participants through Craigs List and walking them through a presentation of the evidence in order to assess their reactions to various elements of the case.  This permitted plaintiff to refine his presentation and emphasize (and de-emphasize) those aspects of the evidence that seemed most (and least) persuasive.  This work, done on an extremely modest time and cost budget, without use of a jury consultant and with out-of-pocket costs of $654, is compensable.  See, e.g., Trainor v. HEI Hospitality LLC, 2012 U.S. Dist. LEXIS 4558, at *32-33 (D. Mass. Jan. 13, 2012)(time spent by counsel in focus groups compensable in light of favorable jury verdict). Cf. Tuli v. Brigham & Women's Hosp., Inc., 2009 U.S. Dist. LEXIS 129768, *13, n. 8 (D. Mass. Jun.  8, 2009)(allowing costs for jury consultant, endorsing use of same).

        **c.**      **Evidentiary Motions**

Plaintiff successfully brought or opposed multiple evidentiary motions that proved to be of critical importance to the successful outcome of the trial.  Plaintiff successfully opposed defendant's motion in limine (Doc. 190) that sought to prevent him from testifying about the fact of his consultations with a mental health counselor.  See Doc. 224 (order denying motion).  This testimony became an important item of evidence supporting his successful emotional distress claim.  Plaintiff likewise defeated defendant's motion in limine to exclude Dr. Wiesen's testimony (Doc. 192) that renewed arguments made in its earlier motion to strike.  See Doc. 225 (order denying motion).  Dr. Wiesen's testimony likewise became a key element of plaintiff's successful proof of discrimination. Defendant also sought to exclude the statistical evidence of the disparate background investigation failure rates between African-American and white applicants to the 80th RTT that Dr. Wiesen presented as part of his testimony (see Doc. 191), but this effort was denied as well (see Doc. 224),

and the jury was permitted to consider this key evidence of discriminatory animus and pretext.

Plaintiff also brought a number of pre-trial motions that played a key role in his success. Defendant sought to introduce the entire investigative files and reports of Riley's prior disciplinary investigations (the "Soares" and "Stallings" reports). Given their unduly prejudicial value, plaintiff sought to exclude both packages, except direct communications to plaintiff relevant to the question of notice. See Doc. 194 (motion in limine to exclude Soares package); Doc. 195 (motion in limine to exclude the Stallings package). Both efforts were successful. See Docs. 227, 229. Defendant also sought to introduce documents from collateral proceedings plaintiff had initiated at the Massachusetts Commission Against Discrimination and in the Superior Court. Plaintiff filed a motion in limine seeking to exclude those documents as confusing to the jury and prejudicial inasmuch as they would suggest litigiousness. See Doc. 196. This Court limited defendant's use of the evidence to impeachment only. Doc. 229.

Plaintiff should be compensated for all of his work on his pretrial motions, including work on aspects that were not ultimately successful. See Trainor, 2012 U.S. Dist. LEXIS 4558, at *30 (efforts expended on unsuccessful motion in limine fully compensable where neither "unproductive" nor "excessive" to plaintiff's success in litigation, efforts were related to series of disputes in which plaintiff prevailed), citing Gay Officers Action League, 247 F.3d at 295; Porter v. Cabral, 2007 U.S. Dist. LEXIS 12306, *49 (D. Mass. Feb. 21, 2007)(declining to reduce fee award for hours spent on failed motions in limine).[2]

### 4.     Post-Trial Motions

Plaintiff spent a number of hours defending against defendant's motion for judgment as a matter of law or in the alternative for a new trial (Doc. 246), and succeeded in that effort. Doc. 264

---

[2]As noted supra, plaintiff has reduced the lodestar amount he seeks in order to account, generally, for those aspects of his motions in limine and other motions for which he was not fully successful.

(order denying defendant's post-trial motions).  Equally important to successfully defending his

verdict was plaintiff's success via his motion to alter the judgment (Doc. 254) in securing an order

from this Court that he be instated in the next available training academy.  As this Court noted in

awarding this relief, instatement "was a remedy he has sought throughout this litigation," Doc. 265,

and indeed is the primary remedy plaintiff sought.  Further, as plaintiff argued in his memorandum

in support of his motion for instatement, this remedy is recognized by the courts as a unique and

essential means by which employment discrimination plaintiffs can be made whole.  Plaintiff should

be compensated for the work done to obtain this important relief.

5.   **Fee Petition**

Plaintiff also seeks compensation for his reasonable efforts in preparing the instant fee

petition.  Those efforts are also compensable. Brewster v. Dukakis, 3 F.3d 488, 494 (1st Cir. 1993).

6.   **Staffing**

Plaintiff's representative, Messing, Rudavsky & Weliky, is a small firm consisting of only

three partners and an associate.  The litigation was led by Attorney Ellen Messing, who took the

major depositions, argued most motions, worked with the expert, and first-chaired the trial.

Substantial assistance was provided by Attorney James Weliky, who prepared discovery and argued

discovery motions as well as preparing and arguing a number of pre-trial, trial and post-trial motions

and legal memoranda. He also handled some depositions and second-chaired the trial.  Additional

assistance was provided by an associate and temporary associate attorneys, who focused primarily on

conducting legal research, arranging for and interviewing witnesses, and managing and organizing

the thousands of pages of documents in this case.  Paralegals provided essential logistical assistance,

such as organizing the focus group, preparing and managing trial exhibits, and preparing damages

information.  Given the nature of the issues involved in prosecuting his case, and the aggressiveness

of defendant's opposition at every stage of this litigation, it would not have been possible to provide

plaintiff the quality of representation he deserved without several legal staff playing different roles.

It should also be noted that defendant was at all times represented by two and sometimes three attorneys, plus a paralegal, during discovery.  Defendant staffed all major offensive depositions with at least two lawyers, and in some cases two lawyers plus a paralegal (in comparison with plaintiff, who used only one lawyer in all depositions).  Defendant was represented by at least two attorneys throughout the pre-trial, trial and post-trial periods of this case.  Further, defense counsel at all times benefited from the skills and expertise available from the in-house general counsel of the Massachusetts State Police.  Plaintiff should not be penalized for availing himself of the same level of skilled representation.  Finally, to the extent that work by attorneys other than Ms. Messing or by staff was unproductive or duplicative, it has been omitted.  All other work should be fully compensated.  See Gay Officers Action League, 247 F.3d at 297-298 (use of multiple lawyers compensable, especially given ferocity of defendant's defense, forcing plaintiffs to respond in kind); Rodriguez-Hernandez v. Miranda-Velez, 132 F.3d 848, 860 (1st Cir. 1998)(same: "[c]areful preparation often requires collaboration and rehearsal, and the court should not reward defendants for their vehement 'Stalingrad defense'"); Trainor, at 2012 U.S. Dist LEXIS, at *33-*35 (work of multiple attorneys compensable where two attorneys completed the majority of the work, and the issues in discovery, summary judgment and trial were complex).

### B.    REASONABLE HOURLY RATE

A reasonable hourly rate is usually determined in the First Circuit by comparison to the rates charged by attorneys of like qualifications, experience and competence.  Matalon v. Hynnes, 806 F.3d 627, 638 (1st Cir. 2015).  It can then be adjusted for certain additional factors at the discretion of the Court, such as the degree of success or factors set forth in Johnson v. Georgia Highway Express, Inc., 488 F.2d 714, 717-719 (5th Cir. 1974).  Hensley, 461 U.S. at 434, n. 9; Matalon, at 638.  Under those standards, the hourly rates plaintiff seeks are reasonable.

1.      **Rates Charged by Attorneys of Like Qualifications, Competence and Experience**

As noted, this case was litigated primarily by Attorney Messing with substantial assistance from Attorney Weliky.  As demonstrated by the affidavits of Lisa Arrowood, Anne Josephson, Beth Myers, Sanford F. Remz, and Elizabeth Rodgers (attached to the Affidavit of Ellen J. Messing at Attachment 2) and Jody L. Newman, (attached to the Affidavit of James S. Weliky at Attachment 2), and as set forth in more detail in the Messing and Weliky Affidavits, both attorneys are highly respected litigators in the field of employment law with more than 65 years' experience between them.  Their colleagues have confirmed that the rates sought here are consistent with those charged by attorneys of similar experience and qualifications.  Ms. Bogin-Farber also provided substantial assistance, and though less experienced than Ms. Messing and Mr. Weliky, is nevertheless highly respected in the community.  Her colleagues provide similar confirmation that her rates are reasonable.  See Affidavit of Gavriela Bogin-Farber and supporting affidavits of David Belfort and Andrea Haas at Attachment 2 to Ms. Bogin-Farber's affidavit.

Ms. Messing has been practicing in the field of employment law for 41 years and Mr. Weliky has been practicing for 24 years.  Most of Ms. Messing's career, and all of Mr. Weliky's career, has been spent in the field of employment law.  They have both been called upon on numerous occasions to write or contribute to amicus curiae briefs and conduct continuing education training for other lawyers. Both have held leadership positions in such professional organizations as the National Employment Lawyers Association, the Massachusetts Employment Lawyers Association, and the Boston and Massachusetts Bar Associations, demonstrating the excellence of their reputation in the legal community.  The firm's associate, Ms. Bogin-Farber, has practiced law for almost seven years, most of which has been in the field of employment law.  She has also risen to positions of leadership with the Massachusetts Employment Lawyers' Association and other bar associations, and is recognized by her peers as an excellent attorney.

14

Numerous courts have awarded fees at the same or higher level than those sought in Riley's petition for attorneys of similar or lesser experience.  See, e.g., Travers v. Flight Servs. & Sys., 2014 U.S. Dist. LEXIS 112960 (D. Mass. Jul. 14, 2014)(awarding $600 hourly rate to attorney with 15 years' experience; $450 to attorney with eight years' experience; $300 to attorney with six years' experience; $250 to attorney with two years' experience); Davis v. Footbridge Eng'g Servs., LLC, 2011 U.S. Dist. LEXIS 93645, at *10, *14 (D. Mass. Aug. 22, 2011)(awarding $650 hourly rate for partner with over 10 years' experience; $565 hourly rate for partner with 14 years' experience; $355 hourly rate for associates with six years' experience; $140-$175 for paralegals); Tuli, 2009 U.S. Dist. LEXIS 129768 (awarding $570-$615 to attorney with 17 years' experience; $630-$695 to attorney with 34 years' experience; $685-$735 to attorney with 29 years' experience; $410-$495 to attorney with four years' experience; $320-$385 to attorney with two years' experience; $275 to paralegal; $110-$240 to other administrative staff).  Cf. Racow v. Town of Winthrop, C.A. 2014-3200-E (Mass. Super. Dec. 13, 2018), Memorandum of Decision and Order on Plaintiff's Petition for Attorneys' Fees and Costs (awarding hourly rate of $600 to attorney with more than 40 years' experience, 20 years of which spent representing plaintiffs; $425 to attorney with nine years' experience); Ebone v. BMI Surplus, Inc., C.A. 1583-cv-0958 (Mass. Super. Sep. 21, 2018), Memorandum of Decision and Order on Plaintiffs' Petition for Award of Attorneys' Fees and Costs (awarding hourly rate of $600 to attorney with more than 40 years' experience, 20 years of which spent representing plaintiffs; $525 to attorney with 34 years' experience; $425 to attorney with nine years' experience); Toussaint v. Brigham & Women's Hosp., C.A. 2014-2253-B (Mass. Super. Aug. 20, 2018)(awarding $550 hourly rate to attorney with less than ten years' civil litigation experience).

The rates Riley proposes are equivalent to those awarded to attorneys of like qualifications, competence and experience.

**2.**      **Degree of Success**

Fee awards can be adjusted depending on whether a party failed to prevail on claims unrelated to those on which she or he succeeded.  Hensley, 461 U.S. at 434.  No adjustment on that basis is required here, since Riley succeeded in all respects on the only claim he brought in this case.

**3.      Applicable Johnson Factors**

Most Johnson factors are already subsumed in the forgoing Hensley analysis.  See Hensley, at n. 9 (many Johnson factors are "usually . . . subsumed within the initial calculation of hours reasonably expended at a reasonable rate").  For example, such factors as the "time and labor required"; the "skill requisite to perform the legal service properly"; the "customary fee"; the "experience, reputation and ability of the attorneys" and "awards in similar cases", see Johnson, 488 F.2d at 717-719, have already been considered supra.  However, some other Johnson factors are relevant here.  These include factors relevant to the particular fee charged to the client and its impact on the firm (e.g., "[t]he preclusion of other employment by the attorney due to acceptance of the case"; "whether the fee is fixed or contingent"; "[t]he nature and length of the professional relationship with the client") and the amount involved and results obtained in the litigation.  Id. 718-719.

**a.      Fee Charged and Relationship with Client**

The Johnson court acknowledges that an attorney in private practice may vary her fee for similar work in light of the professional relationship of the client with the office.  Id., at 719. Here, Messing, Rudavsky & Weliky has represented Riley for the entirety of this litigation.  While the firm's market rate charged to other clients is $625 for senior partners such as Attorney Messing, in light of this firm's longstanding relationship with Riley and his economic circumstances as a patrol officer in a municipal police department, the firm chose to offer him a full contingency rate.  In doing so, and while expending substantial time on Riley's behalf, the firm necessarily forwent client work that could have paid its full market rates.  This Court's fee award should reflect the firm's

willingness to accommodate its client's needs by assuming virtually all of the risk entailed in

representing him, including by forgoing work from clients who could pay its market rates. <u>See</u>

<u>Travers</u>, 2014 U.S. Dist. LEXIS 112960, at n. 3 (approving $600 hourly rate in light of fact that

employment claims are "are typically litigated on a contingency basis with no assurance that any fee

at all will eventually be paid"). <u>Cf. Wildman v. Lerner Stores Corp.</u>, 771 F.2d 605, 612-13 (1st Cir.

1985)(upward adjustment of lodestar rate appropriate because of "added burden and additional

risks" of contingent fee agreement; relying, in part, on relevant <u>Johnson</u> factor).

**b.      Amount Involved and Results Obtained**

As noted, this case was highly contested at every stage.  Defendant's extremely capable and

experienced attorneys waged a vigorous defense and/or offense at every juncture, whether it was in

resistance to plaintiff's discovery motions, motions for summary judgment and to strike, pre-trial

evidentiary disputes, arguments over jury instructions, post-trial briefing and of course during the

trial itself.  Supporting that effort was an agency, the Massachusetts State Police, that employs

thousands of individuals and enjoys substantial cultural and political support in the Commonwealth.

Counsel was supported by the full resources and power of the office of the Massachusetts Attorney

General.  Balanced against the resources that defendant brought to bear in this litigation was a single

individual, a patrol officer in a municipal police force, and a four-lawyer firm whose resources

cannot in any way be considered comparable to those of defendant.

Despite the odds against him, Riley achieved everything he sought to achieve in this

litigation.  He obtained a verdict in his favor.  He obtained compensation for his lost wages and for

his emotional distress.  He defeated defendant's after-acquired evidence affirmative defense.  Most

significantly, he secured the central goal he sought to achieve by bringing his claim in the first place:

instatement in the Massachusetts State Police.  These are truly excellent results and more than justify

the fees Riley seeks to recover here. <u>See Selgas</u>, 104 F.3d at 12 (reinstatement a significant and

17

preferred remedy that "accomplishes the dual goals of providing full coverage for the plaintiff and of deterring such conduct by employers in the future").  See also Valentin-Almeyda v. Municipality of Aguadilla, 447 F. 3d 85, 105 (1ˢᵗ Cir. 2006)(reinstatement is the preferred remedy because it makes plaintiff whole). Cf. Joyce v. Town of Dennis, 720 F.3d at 31 (fee award should reflect plaintiff's "level of success" -- not limited to damages award)(citations omitted); Lewis v. Brockton, 1990 U.S. Dist. LEXIS 2573, at *12 (D. Mass. Feb. 23, 1990)(fee awards under §1988 need not be proportionate to amount of damages recovered, just to degree of success).

   C.    **COSTS**

   Plaintiff seeks reimbursement for expert witness fees not otherwise reimbursed,  deposition transcript costs, hearing transcript costs, trial and deposition subpoenas, courier costs, photocopying, printing, electronic legal research, PACER requests, private investigator fees, witness fees and other costs.  All of these costs were reasonable and necessary to the accomplishment of the aims of Riley's litigation, and are compensable.  See Trainor, 2012 U.S. Dist. LEXIS 4558, at *44-45 (deposition and trial transcript costs, expert witness fees, filing fees, trial subpoenas, photocopies, electronic research charges compensable), citing Fryer v. A.S.A.P. First and Safety Corp., 750 F.Supp.2d 331, 341 (D. Mass. 2010)(allowing costs including payment of expert witnesses, filing, service fees, copying, travel, parking and depositions); Bandera v. City of Quincy, 220 F.Supp.2d 26, 50 n.36 (D. Mass. 2002)(allowing costs including postage, constable fees, messenger fees, local transportation, filing fees, courier services, court reporting fees for deposition, mediation fees, computer research, meals, telephone, parking, facsimile transmissions, reproduction expenses, and telecopy charges).  See also 42 U.S.C. §2000e-5(k)(costs including expert fees compensable).

**III.   CONCLUSION**

   For the reasons stated herein, in Riley's Motion and in his supporting materials, this Court

should order that defendant pay Riley the fees and costs he seeks in his Motion.

Respectfully submitted,

ORLANDO O. RILEY

By his attorneys,

_____
James S. Weliky
BBO No. 631066
Email: jweliky@mrwemploymentlaw.com
Ellen J. Messing
BBO No. 343960
Email: emessing@mrwemploymentlaw.com
Messing, Rudavsky & Weliky, P.C.
One Gateway Center
300 Washington Street, Ste. 308
Newton, MA 02458
(617) 742-0004

Date: July 1, 2019