UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| ORLANDO O. RILEY,     )<br>         Plaintiff       )<br>                            )<br>v.                       )<br>                            )<br>MASSACHUSETTS DEPARTMENT  )<br> OF STATE POLICE,        )<br>         Defendant      )  | | Civil Action No.: 1:15-CV-14137-DJC |

**AFFIDAVIT OF ELLEN J. MESSING IN SUPPORT OF
RILEY'S INITIAL MOTION FOR ATTORNEY'S FEES**

I, Ellen J. Messing, hereby depose and say:

1. Since March 2016 my law firm, Messing, Rudavsky & Weliky, PC, has represented plaintiff Orlando Riley in this litigation. I am a senior partner in Messing, Rudavsky & Weliky, P.C., which concentrates its practice in the representation of employees in employment matters. This Affidavit is submitted in support of Riley's Motion for Attorneys' Fees and Costs ("Motion").

2. As detailed in my resume attached as Attachment 1, I have been a member of the Massachusetts Bar since 1977, the bar of the United States District Court for the District of Massachusetts since 1980, and the bar of the United States First Circuit Court of Appeals since 1994. I have been a partner in the law firm now known as Messing, Rudavsky & Weliky, P.C. since 1988. I am a 1973 magna cum laude graduate of Harvard College and received my Juris Doctor degree in 1977 from Boston University.

3. I concentrate my litigation practice in employment disputes, representing exclusively employees and employee organizations in discrimination, contract, whistleblower, sexual harassment and other employee rights matters. I have successfully litigated and tried many cases in state and federal court, administrative agencies, and before arbitrators. I have previously taught evidence, trial

advocacy, and clinical courses at University of Michigan, Boston University, and Northeastern Law Schools. Further details are included in Attachment 1.

4. I am the co-founder and former president of the Massachusetts Employment Lawyers Association, a former National Secretary and Executive Board member of the National Employment Lawyers Association (NELA) (a national organization of plaintiffs' employment lawyers), the former co-chair and current member of the Boston Bar Association Ethics Committee, and the former chair of the Massachusetts Bar Association's Labor and Employment Section Council. I served as founder, and for 24 years co-chaired, NELA's Ethics Committee.

5. I was elected as a Fellow of the College of Labor and Employment Lawyers in 2000, and I served on the Advisory Council to the American Bar Association's Commission on Evaluation of the Rules of Professional Conduct (Ethics 2000 Commission).

6. I have served as an adjunct faculty member at the Boston University School of Law, as well as at the University of Michigan Law School and Northeastern University School of Law teaching evidence, trial advocacy, and clinical courses.

7. I was selected as one of the "Top 50 Women Super Lawyers" in Massachusetts (2004, 2005, 2009-12). In 2019, I was recognized for the fifteenth year in a row by "Super Lawyers" on their annual list of distinguished attorneys. I was listed in the 2012-19 editions of "Best Lawyers in America" in the "Litigation – Labor & Employment" practice area. In 2016 and 2018, Martindale-Hubbell assigned me the rating of "AV-Preeminent," their highest rating. US News/Best Lawyers' "Best Law Firms" has ranked my law firm and myself Tier 1 in Boston in the "Labor & Employment Litigation" practice area (2013-19). I have been repeatedly recognized by Chambers USA under "Labor & Employment: Mainly Plaintiffs Representation – Massachusetts," listed twice in Band 1 for that category (2014, 2019) and cited as "tenacious," a "strong advocate for her clients" and "one of the deans of the plaintiff practice in Boston."

2

8.      In addition to my practice, I publish and lecture frequently on employment law and trial advocacy issues for NELA, the Massachusetts Bar Association, Massachusetts Continuing Legal Education, the Boston Bar Association, the American Bar Association, and other organizations. I have authored and co-authored a number of amicus curiae briefs in appellate courts in Massachusetts and elsewhere, including the Massachusetts cases Verdrager v. Mintz, Levin, Cohn, Ferris, Glovsky & Popeo, P.C., 474 Mass. 382 (2016), Diaz v. Jiten Hotel Mgmt., 704 F.3d 150 (1st Cir. 2012), Joyce v. Town of Dennis, 720 F.3d 12 (1st Cir. 2013), Patriarca v. Ctr. for Living & Working, 438 Mass. 132 (2002), and Agin v. Federal White Cement, 417 Mass. 669 (1994).

9.      On behalf of Riley, and for the reasons stated herein and in Riley's Intial Motion and Memorandum in Support of Initial Motion for Attorneys' Fees and Costs ("Memorandum"), our law firm is seeking an award of attorneys' fees pursuant to 42 U.S.C. §2000e-5(k). The fees here were incurred in connection with Riley's claim for race discrimination under that statute. Since Riley prevailed on his claim, in that he obtained a jury verdict in his favor and has been awarded compensatory and equitable relief, he is entitled to recover his fees and costs.

10.     All work performed on Riley's behalf in this litigation was performed under a written fee agreement. My firm has represented Riley on a contingency basis, meaning that he is responsible for paying only the costs associated with this litigation in the event the litigation is not successful, and that any legal fees are to be paid out of the proceeds of the litigation.

11.     All lawyers, law clerks and paralegals in my office have kept contemporaneous time records by the tenth of the hour for all work performed in the case. The time sheets indicate in summary form the nature of the work performed, the date it is performed and the amount of time it took to perform the work. The data appearing on these time sheets are entered electronically into a time and billing system. Expenses such as expert witness fees, constable fees, filing fees, court

reporter fees, LEXIS on-line research costs, postage, copying costs, telephone calls and travel expenses are noted and posted to the client's account electronically.

12.  Throughout this litigation, the firm's standard hourly rates have been as follows:

Senior Partner: $625
Partner:         $600
Associate:       $355
Paralegal:       $175

13.  I am lead counsel in this case. I have been assisted primarily by my partner, James S. Weliky, with additional assistance from the firm's associate, Gavriela Bogin-Farber, and the firm's paralegals Ian Adams and Ailee Katz. I also at times used the assistance of the firm's other senior partner, Dahlia Rudavsky, and temporary associate-level attorneys Jill Havens, Wells Wilkinson and Patrick Banfield.

**RATE REQUESTED FOR LEAD COUNSEL**

14.  As noted, since August 2015 to the present, the firm's standard hourly rate for my time has been $625.00 per hour for clients who are able to pay that rate.

15.  I believe that the rate of $600.00 represents the fair market value for the services of an attorney of my experience and ability serving as lead counsel in a case of this nature, as confirmed by the affidavits of Lisa G. Arrowood of Arrowood LLP; Anne L. Josephson, of Kotin, Crabtree & Strong, LLP; Elizabeth A. Rodgers, of Gordon Law Group, LLP; Sanford F. Remz, of Yurko, Salveson & Remz, PC; and Beth R. Myers of Powers, Jodoin, Margolis & Mantell LLP, attached hereto as Attachment 2, and by surveys conducted by Massachusetts Lawyers Weekly for the years 2016-2019 (showing range of partner rates in Boston firms equal to or exceeding the rates sought here), attached hereto at Attachment 3.

**RATES REQUESTED FOR OTHER COUNSEL**

16.     Information regarding the qualifications of Mr. Weliky and Ms. Bogin-Farber and the work they did on this case is included in their Affidavits, which are also filed with Riley's petition.

17.     My other law partner, Dahlia Rudavsky, temporary attorneys Wells Wilkinson, Patrick Banfield and Jill Havens, and paralegals Ian Adams and Ailee Katz also assisted me throughout this litigation, through strategic advice (Ms. Rudavsky), legal research, assistance with preparing court submissions, scheduling witnesses, preparing subpoenas, and related matters.

18.     Ms. Rudavsky received her BA (magna cum laude) from Yale University and her JD from UC-Berkeley (Boalt Hall).  She has concentrated her practice on the representation of individual employees and unions, with an emphasis on discrimination cases, since 1980.  Ms. Rudavsky was twice recognized as "Lawyer of the Year" for the Boston area in representation of individual employees by Best Lawyers (2014, 2017), and once for representation of unions in 2016.  She was named one of Massachusetts Lawyers Weekly's Lawyers of the Year for 1999, 2014 and 2019 and has been repeatedly recognized by Boston magazine in its "Best of Boston" and "Super Lawyers" list of attorneys concentrating in labor and employment law, including repeated recognition as one of the top fifty female lawyers in Massachusetts.  Ms. Rudavsky taught labor law during academic years 2006–2007 and 2007–2008 at Harvard Law School.  Ms. Rudavsky's resume is attached hereto as Attachment 4.

19.     The firm's standard hourly rate for Ms. Rudavsky's time is $625 per hour for clients who are able to pay that rate.  I believe that the rate of $600.00 represents the fair market value for the services of an attorney of Ms. Rudavsky's experience and ability, as confirmed by Attachments 2 and 3 to this Affidavit.

20.     Attorney Patrick Banfield, who worked for our firm as a temporary associate attorney from June 2017 to December 2017, spent the first five years of his career working as an

associate at two different insurance defense firms, handling litigation in Rhode Island, Connecticut and Massachusetts. Since 2010, Attorney Banfield has represented almost exclusively plaintiffs in employment (~70%) and personal injury (~30%) matters.  He has successfully tried cases to Public Hearing at the Massachusetts Commission Against Discrimination and in Massachusetts Superior Court.  Attorney Banfield has been a member of the Massachusetts Academy of Trial Attorneys from 2011 through the present and a member of MELA since 2013.  He served as MELA's Treasurer for three years from 2015 to 2018.  Attorney Banfield has been named a Superlawyers Rising Star in Massachusetts in 2015, 2016, and 2018.  He received his B.A. in 2001 from the University of Vermont and his J.D. from Northeastern University School of Law in 2005.

21.     Attorney Jill Havens, who worked for the firm as a temporary associate attorney from July 2018 to October 2018, has been engaged in the practice of employment law since 2009, and has been the principal of the Law Office of Jill Havens since 2012.  Her practice has focused primarily on employment discrimination, termination and wage and hour litigation.  Ms. Havens is viewed by other attorneys as possessing expertise in the area of employment law.  She receives frequent case referrals from attorneys throughout the Commonwealth of Massachusetts, as well as requests for advice regarding the handling of employment law cases from Massachusetts attorneys. Ms. Havens is an Executive Board member, chair of the Unemployment Law committee and co-chair of the Program Committee of MELA.  Ms. Havens has participated in numerous Massachusetts Continuing Legal Education programs in the areas of employment law and litigation. SuperLawyers recognized Ms. Havens in 2018/2019 as a "Rising Star" in Employment and Labor Law. She received her Juris Doctor degree in 2009 from Northeastern University School of Law and a Bachelor of Arts degree, <u>cum laude</u>, in 1989 from Randolph-Macon Woman's College.  Ms. Havens was admitted to the Massachusetts bar in 2009 and to the United States District Court, District of Massachusetts bar in 2015.

22.     Attorney Wells Wilkinson worked as a temporary associate at Messing, Rudavsky & Weliky from October 2016 to May 2017, primarily conducting legal research, interacting with witnesses and their representatives and engaging with opposing counsel on discovery matters. He has worked as a Senior Staff Attorney at Health Law Advocates in Boston, Massachusetts from June 2017 to the present, representing individuals in health insurance appeals and engaging in policy advocacy. He worked as a Staff Attorney for that organization from May 2015 to August 2016. From January 2014 to September 2016, he worked as a Staff Attorney and Policy Analyst for the Community Catalyst foundation, providing assistance and guidance to consumers and others, including CMS, regarding health care regulations, policies and operations. From April 2008 to December 2013, he worked for Community Catalyst overseeing a project providing funding and support for impact litigation on health care issues. From October 2006 to September 2007, he worked as an Appeals Claim Case Technician for the Social Security Administration, reviewing and organizing extensive health records and income information to prepare disability claims for Administrative Law Judge appeal hearings at the Social Security Administration. During law school, from May 2005 to May 2006, he worked with the Cambridge Human Rights Commission investigating and mediating discrimination complaints in employment, housing and public accommodation. He received his B.A. from Boston University, and his J.D. from New England School of Law in May 2006.

23.     Mr. Wilkinson's, Mr. Banfield's and Ms. Havens's resumes are attached hereto as Attachment 5. The firm's standard hourly rate for temporary and regular associate attorneys is $355.00 per hour for clients who are able to pay that rate. I believe that the rate of $350.00 represents the fair market value for the services of attorneys of Mr. Wilkinson's, Mr. Banfield's and Ms. Havens's experience and ability, as confirmed by Attachment 3 to this Affidavit, and Attachment 2 to the Affidavit of Gavriela Bogin-Farber, filed herewith.

24.     The two individuals who worked as paralegals on this case are Ian Adams and Ailee Katz.  Mr. Adams's and Ms. Katz's resumes are attached hereto as Attachment 6.  The firm's standard hourly rate for paralegals is $175.00 per hour for clients who are able to pay that rate.  I believe that the rate of $175.00 represents the fair market value for the services of paralegals of Mr. Adams and Ms. Katz's experience and ability, as confirmed by Attachment 3 to this Affidavit.

25.     The time expended by Ms. Rudavsky amounted to 3.3 hours over the course of this case, and the total amount of fees sought for her time totals $1,980.00.  The time expended by Mr. Wilkinson, Mr. Banfield and Ms. Havens amounted to 236.30 hours over the course of this case, and the total amount of fees sought for their time totals $82,705.  The time expended by Mr. Adams and Ms. Katz amounted to 71.2 hours over the course of this case, and the total amount of fees sought for their time totals $12,460.[1]  I believe this time was necessary to the case, and have therefore included it.

**HOURS REASONABLY EXPENDED**

26.     Plaintiff requests a fee award based on the total number of hours reasonably expended in pursuit of his claim, an approach supported by the case law.  See Memorandum, §II.  The components of that requested award - hours reasonably expended - are discussed in the following paragraphs.

27.     Appended as Attachment 7 to this affidavit are copies of original electronically-produced contemporaneous time records of all persons for whose time a fee award is sought.  These time records consist of original records that have been edited to correct data entry and typographical errors on the originals, to protect attorney-client confidences, and to protect attorney work-product.

---

[1] The foregoing are totals, gross of the application of the 20% across-the-board reduction described in ¶28.

28.     The time records attached hereto reflect that plaintiff's attorneys expended a total of 3,077.3 hours on plaintiff's behalf.  However, from those time records, I have deleted a total of 526.10 hours that in the exercise of billing judgment I conclude were unproductive, unnecessary, excessive or duplicative.  Those are indicated with a "NO CHARGE" designation to the right of the billing entry.  Such entries include charges deducted for: duplication of time spent on similar tasks; time spent conducting legal research, drafting legal memoranda, preparing for depositions, summarizing depositions and similar tasks that exceeded a reasonable amount of time given the nature of the task; many conferences between or among attorneys; time spent correcting errors (for example re-filing already-filed documents under seal); preliminary tasks and background research.  I have also applied an across-the-board reduction of 20% to account (approximately) for the pursuit of a number of unsuccessful motions. See Memorandum, §II(A).

29.     I seek compensation for the following hours expended to date: Ms. Messing: 939.9 hours; Mr. Weliky: 1028.10 hours; Ms. Bogin-Farber: 272.40 hours; Ms. Rudavsky: 3.3 hours; other attorneys: 236.3 hours; and paralegals: 71.2 hours.

30.     While the total number of hours sought is substantial, even after the exercise of billing judgment, those hours are justified by the exigencies of this case.  The following are some of the circumstances that contributed to plaintiff's fee request:

   a.  Defendant resisted virtually all discovery into comparators and statistical evidence of discrimination that, as argued in his Memorandum in Support of Initial Motion for Attorneys Fees and Costs, plaintiff reasonably believed was relevant and subject to discovery in this disparate treatment case.  This required protracted preliminary negotiations in order to obtain more complete responses, then substantial motion practice despite repeated unsuccessful efforts to narrow the parties' remaining differences.  Defendant even resisted producing such manifestly discoverable

9

information as the identities and contact information of direct comparators, again requiring motion practice which ultimately resulted in the disclosure of comparator identities.

b. Much of the comparator discovery produced was voluminous, disorganized and duplicative, requiring substantial time to organize and analyze what was produced, determine whether it was responsive to discovery and what responsive documents had been withheld (defendant did not produce a privilege log until ordered to do so after motion by plaintiff). This effort was hindered by defendant's overzealous redactions, which was not corrected until the eve of hearing on plaintiff's motion seeking same;

c. Defendant also resisted discovery into such subjects as statistical information regarding its hiring practices; information as to other complaints of discrimination; and whether defendant had ever analyzed its selection procedures for job relatedness and reliability – all legitimate and well-recognized subjects of discovery in discrimination cases; Lima resisted discovery of his personnel file – also a legitimate area of inquiry;

d. Plaintiff was required to review, analyze and prepare exhibits based on a substantial number of documents from third parties, including from the New Bedford Police Department, the Massachusetts Commission Against Discrimination, and the Rhode Island State Police;

e. Several third party witnesses were represented by counsel, and required substantial efforts to obtain relevant documents or testimony, whether through summary judgment affidavits or deposition;

f. At the conclusion of discovery, plaintiff was required to defend against defendant's unsuccessful Motion for Summary Judgment, including by responding to 232

purportedly undisputed "Material Facts", 69 exhibits and a 31-page supporting memorandum;

g. Plaintiff was constrained to hire a private investigator to locate and attempt to convince reluctant comparator witnesses to testify – an effort that ultimately resulted in one of the comparators (Grundy) testifying at trial to positive effect;

h. Plaintiff prepared and offered testimony from 17 witnesses, several of whom were adverse. These included: four adverse witnesses (Lima, Butler, Christiansen, McGinn); eight third-party fact witnesses (Grundy, Conti, Garcia, Hebert, Ledo, Rebelo, Ruginis, Wood); three emotional distress witnesses (Phillips, C. Riley, Feliciano); an expert witness (Wiesen); and Riley himself. Plaintiff also examined an eighteenth witness called by defendant (Flynn).

i. Plaintiff recruited expert witness Joel Wiesen, whose report was essential to defeating summary judgment, and whose testimony during trial was pivotal. In order to achieve those outcomes, plaintiff expended substantial time and effort working with the expert to develop his report, prepare him for deposition (twice, because defendant scheduled his deposition in fall 2017, then decided to reschedule it after summary judgment had been determined, after considerable deposition preparation had been undertaken in 2017), revise his report in light of additional discovery (including on two occasions when defendant corrected its production of statistical data), prepare his testimony questions and prepare him to testify. Plaintiff was also required to resist defendant's unsuccessful Motion to Strike Wiesen's report and its subsequent unsuccessful Motion *in Limine* to exclude his testimony at trial, and then respond to arguments against his testimony in defendant's post-trial motions.

31.     Riley also seeks a fee award for time to be reasonably expended in any future proceedings in this litigation in this Court, including further proceedings involving this fee petition. Plaintiff respectfully requests leave to file a supplemental fee petition once these post-trial matters have concluded.

**COSTS**

32.     Plaintiff seeks reimbursement for the reasonable expenses of litigation, including the cost of service fees, copying, deposition, hearing and trial transcript fees, expert witness fees, postage, transportation costs and the like. A detailed listing of these expenses, taken from contemporaneous records and totaling $57,740.93, is set out in Attachment 8 hereto.

33.     A portion of the expenses for which plaintiff seeks reimbursement are related to plaintiff's expert. I have attached time records with explanations of work expended for Dr. Wiesen at Attachment 9 hereto, representing a total of 158.7 hours billed. From the total number of hours reflected in Attachment 9, plaintiff has deducted 21.75 hours for deposition preparation and time spent at deposition ($7,612.50) that has already been reimbursed by defendant. Plaintiff has also deducted $1,312.11, reflecting the fact that Dr. Wiesen charged 7.5 hours of travel time to and from his deposition at half of his regular $350 hourly rate.[2] Plaintiff thus seeks reimbursement for 124.95 hours of Dr. Wiesen's time at his regular hourly rate of $350 per hour, for a total of $43,732.50, and nine hours at his travel rate of $175/hour ($1,575),[3] less a $5,460 courtesy credit provided to Riley by Dr. Wiesen for a grand total of $39,847.50. He also seeks reimbursement for Dr. Wiesen's

---

[2] The total deposition-related costs charged by Dr. Wiesen were $15,774.76 inclusive of preparation time, travel time and expenses for both scheduled depositions.. Plaintiff and defendant disagreed regarding defendant's responsibility to reimburse all of those costs and initiated discussions in an effort to narrow their differences. Ultimately, plaintiff agreed to write off Dr. Wiesen's travel time of 7.5 hours ($1,312.11) and not to seek that amount in his fee petition. That sum is not included in the amounts sought here. Defendant made additional payments toward Dr. Wiesen's deposition, as detailed in the text, and those amounts are likewise not sought here.

[3] This item is reflected on Invoice No. 1891 in Att. 9 as "4.5" hours charged. This represents nine hours at the $175 (one-half) travel rate.

expenses (as itemized), charged to plaintiff and not otherwise reimbursed by defendant: Dr. Wiesen charged travel expenses of $620.96, and defendant has reimbursed plaintiff $131.25. Thus he seeks reimbursement for $489.71 in expenses. The grand total of expert witness costs – fees and expenses - for which plaintiff seeks reimbursement is $40,337.60.

**FEE AWARD REQUESTED - STANDARD HOURLY RATE**

34. For the reasons outlined in his Memorandum in Support of Petition For Attorneys Fees and Costs enclosed herewith, plaintiff seeks the following fee and expense award:

| | | |
|---|---|---|
| Ms. Messing: | 939.9 hours x $600 = | $ 563,940.00 |
| Mr. Weliky: | 1028.10 hours x $525 = | $ 539,752.50 |
| Ms. Rudavsky: | 3.3 hours x $600 = | $ 1,980.00 |
| Ms. Bogin-Farber: | 272.40 hours x $350 = | $ 95,340.00 |
| Contract attorneys Wilkinson, Banfield & Havens: | | |
| | 236.30 hours x $350 = | $ 82,705.00 |
| Paralegals Adams & Katz: | | |
| | 71.2 hours x $175 = | $ 12,460.00 |
| TOTAL FOR PROFESSIONAL HOURS BILLED TO DATE: | | $1,296,177.50 |
| LESS 20% REDUCTION : | | $ (259,235.50) |
| TOTAL LODESTAR AMOUNT SOUGHT: | | $1,036,942.00 |
| EXPENSES PER ATTACHMENT 8: | | $ 57,740.93 |
| GRAND TOTAL SOUGHT: FEES PLUS EXPENSES: | | $ 1,094,682.93 |

Signed under the penalties of perjury this 1st day of July 2019,

/s/Ellen J. Messing
Ellen J. Messing